[No. D047796. Fourth Dist., Div. One. Dec. 17, 2007.]

SYCAMORE RIDGE APARTMENTS LLC, Plaintiff and Appellant, v.
WILLIAM H. NAUMANN et al., Defendants and Appellants;
JEFFREY LaFAVE et al., Defendants and Respondents.

1386

**COUNSEL**

David A. Kay and John E. Thickstun for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Russell M. Mortyn and Kenneth C. Feldman for Defendants and Appellants.

Coughlan, Semmer & Lipman, Robert F. Semmer and Daniel A. Kaplan for Defendants and Respondents.

**OPINION**

**AARON, J.—**

I.

## INTRODUCTION

This appeal arises out of a malicious prosecution action filed by plaintiff Sycamore Ridge Apartments, LLC (Sycamore Ridge), against defendants Shirley Powell, William H. Naumann, Christopher H. Hagen, Lisa D. Stepp, Steven M. Nunoz, and Naumann & Levine, LLP (collectively Naumann

defendants), and Jeffrey LaFave and LaFave & Rice (jointly LaFave defendants). The malicious prosecution action arises from Powell's participation as a plaintiff in *Gonzalez v. Sycamore Ridge Apartments LLC* (Super. Ct. San Diego County, 2003, No. GIC812933) (*Gonzalez*).

The Naumann attorneys filed the complaint in *Gonzalez* on behalf of 45 individual plaintiffs, including Powell, who had lived and/or worked at Sycamore Ridge. The complaint set forth 18 causes of action alleging that Sycamore Ridge failed to maintain the apartments in a habitable condition, and that Sycamore Ridge engaged in unfair business practices pertaining both to tenants and to former Sycamore Ridge employees. Through discovery it became apparent that Powell's main contention involved Sycamore Ridge's failure to return her security deposit when she moved out of the complex. After Sycamore Ridge noticed a deposition date for Powell, she requested that the date be changed and that the deposition take place at her home, due to her advanced age and poor health. Powell maintains that she later sought to end her participation in the litigation because she became confined to bed and believed it would be difficult for her to continue to prosecute the case in view of her deteriorating health. Powell ultimately voluntarily dismissed her portion of the lawsuit, without prejudice. Sycamore Ridge later offered to waive costs if Powell would agree that the dismissal of her claims would be with prejudice. Powell accepted Sycamore Ridge's offer.

Sycamore Ridge subsequently filed a malicious prosecution action against Powell and her attorneys. In response to the malicious prosecution action, the Naumann defendants and the LaFave defendants filed motions to strike under the anti-SLAPP (strategic lawsuit against public participation) law. The trial court denied the motion to strike as to the Naumann defendants, but granted it as to the LaFave defendants.

The Naumann defendants appeal from the order of the trial court denying their motion to strike under the anti-SLAPP law. Sycamore Ridge appeals from the trial court's order granting the LaFave defendants' motions to strike under the anti-SLAPP law.

In their appeal, the Naumann defendants contend that the trial court erred in denying their anti-SLAPP motion because Sycamore Ridge failed to establish a probability of succeeding on its malicious prosecution claim. In its appeal, Sycamore Ridge contends that the trial court erred in granting the LaFave defendants' anti-SLAPP motion because Sycamore Ridge sufficiently established a probability of succeeding on its malicious prosecution claim against the LaFave defendants, despite the LaFave defendants' late entry into the case.

We conclude that Sycamore Ridge demonstrated a probability of prevailing on its malicious prosecution claim as to both groups of defendants.[1] We therefore affirm the trial court's order denying the Naumann defendants' anti-SLAPP motion, and reverse the trial court's order granting the LaFave defendants' anti-SLAPP motions.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The underlying lawsuit against Sycamore Ridge*

In 2002, a Sycamore Ridge tenant contacted the Naumann attorneys, complaining about conditions at the apartment complex. An investigation into the complaints allegedly revealed high airborne readings of aspergillus/penicillium spores, maintenance deficiencies, roof leaks, vermin infestations, and flying termites at Sycamore Ridge.

On December 12, 2002, the Naumann attorneys sent unsolicited letters to present and former tenants of Sycamore Ridge informing them about complaints of health problems that some of the tenants had suffered. Included with the letter were contingency fee agreements to be signed and returned by those tenants who wished to be represented by the Naumann attorneys in future litigation against Sycamore Ridge.

Powell signed and returned the retainer agreement, and subsequently discussed her complaints with Naumann attorneys. Powell apparently discussed with the attorneys symptoms she suffered while living at Sycamore Ridge, including sinus congestion, watery and itchy eyes, headaches and fatigue, heating problems she had encountered in her apartment, and the fact that she believed Sycamore Ridge had unfairly retained her security deposit.

In June 2003, the Naumann attorneys filed a complaint against Sycamore Ridge on behalf of 45 individual plaintiffs, including Powell. The complaint set forth 18 causes of action arising out of allegations of poor living conditions at Sycamore Ridge and unfair business practices on the part of

---

[1] We do not intend to suggest that Sycamore Ridge will necessarily succeed in its malicious prosecution action, but rather, only that Sycamore Ridge has met its burden to show a probability of prevailing on the merits, sufficient to survive the anti-SLAPP motions. "An anti-SLAPP motion must be denied ' "if the plaintiff presents evidence establishing a prima facie case which, if believed by the trier of fact, will result in a judgment for the plaintiff. [Citation.]" ' [Citation.] Only a minimal showing of merit is required. [Citation.]" (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1421 [50 Cal.Rptr.3d 65].)

Sycamore Ridge management. From the complaint, it appears that all plaintiffs were named as complainants in all 18 counts.[2] A letter Naumann sent to Powell in August 2003 indicates that the Naumann attorneys had filed a complaint alleging 18 causes of action against Sycamore Ridge on her behalf. The total damages alleged in the complaint on behalf of the plaintiffs, as a group, exceeded $4 million.

Sycamore Ridge propounded form interrogatories to Powell. Powell verified her responses on September 7, 2003. In her responses, Powell indicated that she was not claiming to have suffered physical injuries, property damage, lost earnings or lost future earnings. In response to the question, "Do you attribute any physical, mental, or emotional injuries to the INCIDENT?" Powell answered, "Yes." Despite having indicated in her response to the solicitation letter that she had suffered from various physical ailments as a result of living at Sycamore Ridge, when Powell was asked to identify each injury she attributed to Sycamore Ridge's conduct, Powell answered, "The owner and staff have caused me mental and emotional distress because of their dishonesty." Powell identified *no* past or present physical injuries that she attributed to living at Sycamore Ridge. When asked "Do you still have any complaints that you attribute to the INCIDENT," Powell answered "No." Powell stated that she had not received any consultation, examination or treatment from a health care provider, had not taken any medications, and had not required any other medical services related to her tenancy at Sycamore Ridge.

In response to the question, "Do you attribute any loss of or damage to a vehicle or other property to the INCIDENT?" Powell answered, "No." In response to the question, "Do you attribute any loss of income or earning capacity to the INCIDENT?" Powell answered "No." In fact, Powell answered "No" or "Not that I know of" to the great majority of the interrogatories that inquired about the substance of her claims. However, in response to the question "Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement," Powell answered, "I feel that the apartment at 2425 Hibiscus Ave, # 270 Dr. is unsuitable to live in." (*Sic.*)

On December 9, 2003, the Naumann attorneys filed a statement of damages on behalf of Powell. The statement of damages asserted that Powell

---

[2] The complaint alleges that all plaintiffs were renters at Sycamore Ridge, and also that they had been employees of Sycamore Ridge. It is unlikely that all of the plaintiffs were both tenants and former employees of Sycamore Ridge. Although the complaint attempts to limit the number of plaintiffs alleging the employment causes of action by stating that those causes of action were being brought "[b]y Plaintiff Employees against Defendants" and that only "certain Plaintiffs were employed by Defendants," the complaint does not identify which of the plaintiffs had been employed by Sycamore Ridge and which had not.

had incurred $20,000 in emotional distress damages, $2,000 in property damage, and $50,000 in punitive damages.

Sycamore Ridge noticed Powell's deposition for April 23, 2004. Naumann arranged for Powell to appear for her deposition on April 29. Powell subsequently requested to change the date of her deposition, and it was rescheduled for September 21. Powell failed to appear on September 21, and was never deposed.

The LaFave defendants became involved in plaintiffs' case on September 16, 2004. On October 5, the LaFave defendants appeared in the case on plaintiffs' behalf after having filed an association of counsel form with the court.

On October 22, 2004, Naumann wrote to Powell, "I understand from our previous conversation you have instructed this office to dismiss you . . . although the dismissal will be without prejudice, you may nonetheless be barred from bringing another suit for the damages you incurred at Sycamore Ridge Apartments."

Powell voluntarily dismissed her claims without prejudice on November 19, 2004. After receiving a letter from Sycamore Ridge's counsel offering to waive costs if Powell would agree that the dismissal be with prejudice, the Naumann attorneys filed a dismissal with prejudice on Powell's behalf on January 20, 2005.[3]

### Powell's complaints against Sycamore Ridge

Powell lived at Sycamore Ridge from February 15, 2002 to August 31, 2002. On July 12, 2002, Powell wrote a letter to Sycamore Ridge management in which she stated, "I have enjoyed my stay here at Sycamore Ridge and knowing all of you."

On October 16, 2002, Powell filed a small claims action against Sycamore Ridge alleging that Sycamore Ridge had failed to return her security deposit after she moved out of the complex. Powell sought to recover $900. A trial was held in small claims court on November 18, 2002. The court entered judgment in favor of Sycamore Ridge.

Naumann received a signed retainer agreement from Powell on December 30, 2002. Powell had checked several of the problems listed in the solicitation letter, and included that letter with the retainer agreement. Powell made

---

[3] The Naumann and LaFave defendants assert that Powell's claims were dismissed only because she requested dismissal, and not because her claims lacked merit.

notations next to certain listed symptoms, including "repeated sinus congestion," "watery and/or itchy eyes," "headaches," "respiratory infections or problems such as asthma," and "fatigue." Powell also handwrote: "These symptoms cleared up after I moved out on 8/31/02."

It appears from declarations the Naumann attorneys filed in the subsequent malicious prosecution that Powell had never provided them with any specific information indicating that there was mold in her apartment, or that she had suffered any damages attributable to mold.

B. *Sycamore Ridge's malicious prosecution action against the Naumann and LaFave defendants*

Sycamore Ridge filed a complaint for malicious prosecution against the Naumann and LaFave defendants on September 9, 2005.[4] Sycamore Ridge alleged in its complaint that the Naumann and LaFave defendants had filed and/or prosecuted Powell's claims without probable cause, and that defendants had maintained Powell's portion of the lawsuit in bad faith, maliciously, and without probable cause.

C. *Defendants' anti-SLAPP motions*

The Naumann defendants filed a special motion to strike under Code of Civil Procedure[5] section 425.16, the anti-SLAPP law, on October 7, 2005. In their motion, the Naumann defendants asserted that Powell's portion of the lawsuit had not been terminated favorably to Sycamore Ridge, that her claims were brought with probable cause, that they were not filed with malice, and that Sycamore Ridge could not prove that it had suffered damages as a result of Powell's claims against it.

The LaFave defendants filed their own special motion to strike under section 425.16 on October 11, 2005. In their motion, the LaFave defendants contended that they had not become involved in the *Gonzalez* litigation until August 31, 2004, that their participation was limited to providing expertise concerning mold, and that they had not had any contact with Powell.

Sycamore Ridge filed oppositions to the Naumann and LaFave defendants' anti-SLAPP motions on November 17, 2005.

---

[4] Trial in the *Gonzalez* action was scheduled to begin on September 9, 2005.

[5] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

D. *The trial court's order concerning defendants' anti-SLAPP motions*

### 1. *The Naumann defendants' anti-SLAPP motion*

On December 9, 2005, the trial court entered an order denying the Naumann defendants' anti-SLAPP motion, ruling that Sycamore Ridge had presented sufficient evidence to demonstrate that the Naumann defendants commenced the underlying lawsuit, that the dismissal of the lawsuit constituted a favorable termination for Sycamore Ridge, that the Naumann defendants had lacked probable cause to prosecute Powell's claims, and that the Naumann defendants had prosecuted the action with malice.

### 2. *The LaFave defendants' anti-SLAPP motion*

In the same order, the trial court granted the LaFave defendants' anti-SLAPP motion. The trial court ruled that Sycamore Ridge had not met its burden of demonstrating a probability that it would prevail against the LaFave defendants in its malicious prosecution action because there existed "no evidence that the LaFave defendants participated in the lawsuit." In granting the LaFave defendants' motion, the court stated, "[I]t appears the LaFave defendants joined in the underlying case only two months before the case was dismissed and nine days after Powell had requested that her case be dismissed. There is no evidence presented that the LaFave defendants continued to prosecute her case or did anything during this time."

E. *The notices of appeal*

The Naumann defendants filed a timely notice of appeal on December 27, 2005, challenging the trial court's order denying their anti-SLAPP motion. Sycamore Ridge filed a timely notice of appeal of the court's order granting the LaFave defendants' anti-SLAPP motion on January 11, 2006.

### III.

### DISCUSSION

A. *The law governing anti-SLAPP motions*

"Whether section 425.16 applies, and whether the plaintiff has shown a probability of prevailing, are both questions we review independently on appeal." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906 [120 Cal.Rptr.2d 576]; see also *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786] (*HMS Capital*) [orders granting anti-SLAPP motions are reviewed de novo].)

Section 425.16 provides in pertinent part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■ Resolution of a special motion to strike "requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).)

For purposes of an anti-SLAPP motion, "[t]he court considers the pleadings and evidence submitted by both sides, but does not weigh credibility or compare the weight of the evidence. Rather, the court's responsibility is to accept as true the evidence favorable to the plaintiff . . . ." (*HMS Capital, supra*, 118 Cal.App.4th. at p. 212, citation omitted.) A plaintiff "need only establish that his or her claim has 'minimal merit' [citation] to avoid being stricken as a SLAPP. [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 [46 Cal.Rptr.3d 638, 139 P.3d 30] (*Soukup*).)

B. *Sycamore Ridge's claim arises from a protected activity*

The Naumann and LaFave defendants[6] met their burden to show that Sycamore Ridge's malicious prosecution action arose from their protected petitioning activities. A protected activity is "any act" that is completed "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Filing a lawsuit is an exercise of a party's constitutional right of

---

[6] Although the Naumann and LaFave defendants filed separate anti-SLAPP motions and the trial court reached different conclusions regarding the two sets of defendants, a significant portion of the issues and arguments raised by the parties overlap and apply to both sets of defendants. For this reason, we do not distinguish between the Naumann and LaFave defendants in some portions of our analysis. To the extent that the issues raised by the court's order differ between the LaFave defendants and the Naumann defendants, we will separately address those issues.

petition (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564]), and claims for malicious prosecution may thus be subject to the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733–741 [3 Cal.Rptr.3d 636, 74 P.3d 737].) Sycamore Ridge appears to concede that its claim for malicious prosecution arose from a protected activity on the part of the Naumann and LaFave defendants. Thus, the pertinent question on appeal is whether Sycamore Ridge met its burden to present sufficient evidence to demonstrate a probability of prevailing on its malicious prosecution claim.

C. *Sycamore Ridge has demonstrated a probability of prevailing on its malicious prosecution claim against both sets of defendants*

In opposing defendants' anti-SLAPP motion, Sycamore Ridge had the burden to present evidence sufficient to demonstrate a probability that it would prevail on its malicious prosecution claim against the Naumann and LaFave defendants. (§ 425.16, subd. (b)(2); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Equilon, supra,* 29 Cal.4th at p. 67.) " '[T]he plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' [Citation.]" (*Navellier, supra,* 29 Cal.4th at pp. 88–89.)

██ In order to establish a claim against the Naumann and LaFave defendants for malicious prosecution, Sycamore Ridge must plead and prove that the prior action " '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [Sycamore Ridge's] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (*Crowley*).)

"[C]ontinuing to prosecute a lawsuit discovered to lack probable cause" may also support a claim of malicious prosecution. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802] (*Zamos*).) "Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset." (*Id.* at p. 969.) "A person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution." (*Paramount General Hospital Co. v. Jay* (1989) 213 Cal.App.3d 360, 366, fn. 2 [261 Cal.Rptr. 723] (*Paramount*), disapproved in part on other grounds in *StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1404 [39 Cal.Rptr.3d 682], citing *Lujan v. Gordon* (1977) 70 Cal.App.3d 260, 263–264 [138 Cal.Rptr. 654].)

A claim for malicious prosecution may also apply to a defendant who has brought an action charging multiple grounds of liability when some, but not all, of the grounds were asserted without probable cause and with malice. (*Crowley, supra,* 8 Cal.4th at p. 671, citing *Bertero v. National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608] (*Bertero*).)

1. *Sycamore Ridge presented evidence to support the allegation that the underlying litigation was terminated in its favor*

■ "The theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused, and coupled with the other elements of lack of probable cause and malice, establishes the tort . . . [of malicious prosecution]." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335].) "It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor." (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 845 [92 Cal.Rptr. 179, 479 P.2d 379].)

A " 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution." (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 751 [159 Cal.Rptr. 693, 602 P.2d 393] (*Lackner*).) " '[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record "to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." ' [Citations.]" (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 198 [51 Cal.Rptr.3d 484] (*Ross*).) "Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. [Citation.]" (*Ibid.*)

The *Lackner* court quoted with approval several examples that the appellate court in *Minasian v. Sapse* (1978) 80 Cal.App.3d 823, 827 [145 Cal.Rptr. 829] considered illustrative of terminations that may or may not be deemed favorable: " 'In some instances the manner of termination reflects the opinion of the court that the action lacks merit, as where the criminal proceedings are dismissed for lack of sufficient evidence of guilt following a preliminary hearing. [Citation omitted.] In others, the termination reflects the opinion of the prosecuting party that, if pursued, the action would result in a decision in favor of the defendant, as where the district attorney seeks dismissal of the

prosecution of a criminal action for lack of evidence [citations omitted] or where the plaintiff in a civil proceeding voluntarily dismisses the action [citations omitted]. By way of contrast, a dismissal . . . for lack of jurisdiction [citation omitted] not only is not on the merits, it is unreflective of the merits; neither the judgment of the court nor that of the prosecuting party on the merits is implicated in the dismissal.' " (*Lackner, supra,* 25 Cal.3d at p. 750, quoting *Minasian, supra,* 80 Cal.App.3d at p. 827.)

Defendants contend that the trial court erred in concluding that Sycamore Ridge established a probability of prevailing on the issue of favorable termination.[7] Specifically, defendants challenge whether the voluntary dismissal of Powell's claims should be considered a favorable termination. A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. (*Weaver v. Superior Court* (1979) 95 Cal.App.3d 166, 185 [156 Cal.Rptr. 745], disapproved on other grounds in *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882 [254 Cal.Rptr. 336, 765 P.2d 498] (*Sheldon Appel*).) This is because " '[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant] . . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted.' " (*Lackner, supra,* 25 Cal.3d at pp. 750–751.)

 According to defendants, there could be no finding of a favorable termination here because, they claim, the underlying reasons for terminating the action did not reflect on Sycamore Ridge's innocence. Defendants note that Sycamore Ridge presented no evidence as to why Powell's case was dismissed, and argue that the evidence demonstrates that Powell dismissed her case because of her advanced age and poor health, not because her claims lacked merit. However, the trial court noted that Sycamore Ridge offered evidence that reasonably suggested that the dismissal occurred because Powell's claims lacked merit, including the fact that Powell failed to appear for two depositions and that she submitted interrogatory responses that indicated she had incurred no damages other than "mental and emotional distress," after having filed a complaint with 18 causes of action alleging physical injury and property damage. We agree with the trial court that the evidence Sycamore Ridge presented in opposition to the special motion to strike permits the reasonable inference that the allegations of mold contamination and personal injuries brought on behalf of Powell were groundless, and that the voluntary dismissal was motivated by a recognition that most of the claims made on Powell's behalf in the complaint were meritless. (See

---

[7] Although the trial court did not consider this matter with regard to the LaFave defendants because it had already determined that the case against them could not go forward, the substance of this issue applies equally to both the Naumann defendants and the LaFave defendants.

*Ross, supra*, 145 Cal.App.4th at p. 200 [given total lack of merit in plaintiff's claims, dismissal of a lawsuit for refusing to be deposed reflected adversely on the merits of the action based on the natural assumption that one does not simply abandon a meritorious action once instituted].)[8]

Defendants suggest that the agreement to dismiss with prejudice in exchange for a waiver of costs constitutes a negotiated settlement, and that the dismissal therefore does not reflect on the merits of the action. However, the fact that Powell later dismissed her case with prejudice, after Sycamore Ridge agreed to waive costs, is not determinative on the issue of favorable termination. Powell voluntarily dismissed her claims *before* any discussions with Sycamore Ridge concerning a waiver of costs. "[A] voluntary dismissal, even one without prejudice, may be a favorable termination which will support an action for malicious prosecution. [Citation.] 'In most cases, a voluntary unilateral dismissal is considered a termination in favor of the defendant in the underlying action; the same is true of a dismissal for failure to prosecute. [Citations.]' [Citation.]" (*Fuentes v. Berry* (1995) 38 Cal.App.4th 1800, 1808 [45 Cal.Rptr.2d 848].)

Although Powell had not given up her option to file a new action against Sycamore Ridge at the time she voluntarily dismissed her claims, the underlying action was terminated upon the initial dismissal. That Powell later agreed to give up her right to file another suit against Sycamore Ridge in exchange for a waiver of costs does not alter the fact that she unilaterally voluntarily dismissed her claims. For these reasons, we agree with the trial court that Sycamore Ridge made a sufficient prima facie showing that Powell's claims against Sycamore Ridge were terminated in Sycamore Ridge's favor.

---

[8] After briefing was completed in this case, the Naumann and LaFave defendants wrote to this court requesting that the court consider a recently filed opinion issued by Division Three of this district in *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043 [61 Cal.Rptr.3d 434] (*Contemporary Services*). Defendants contend that this case supports their position on the question whether Sycamore Ridge has met its burden to show a likelihood of prevailing on the issue of favorable termination. Our review of the case establishes that the opinion supports the conclusion we reach. In *Contemporary Services*, the court stated that the malicious prosecution plaintiffs had not made a sufficient showing that "the dismissal of the complaint in the underlying action reflects their innocence of the misconduct alleged therein." (*Id.* at p. 1057.) Specifically, the court noted that "the record shows defendants could not afford to pursue the matter, not that they lost faith in the merit of their claims." (*Ibid.*) The court further observed, "[t]he record does not show defendants sustained any adverse rulings in the case, or *otherwise had reason to believe their claims would be unsuccessful.*" (*Ibid.*, italics added.) In this case, in contrast, Sycamore Ridge has presented evidence that defendants had reason to believe that a number of Powell's claims would be unsuccessful.

2. *Sycamore Ridge established a prima facie showing that the Naumann and LaFave defendants lacked probable cause to prosecute some or all of the 18 counts in the complaint on behalf of Powell*

■ An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must "determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable." (*Sheldon Appel, supra*, 47 Cal.3d at p. 878.) "The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted. [Citation.]" (*Ibid.*) The test the court is to apply is whether "any reasonable attorney would have thought the claim tenable . . . ." (*Id.* at p. 886.) The tort of malicious prosecution also includes the act of "continuing to prosecute a lawsuit discovered to lack probable cause." (*Zamos, supra*, 32 Cal.4th at p. 973.) In determining the probable cause issue, the same standard applies "to the continuation as to the initiation of a suit." (*Id.* at p. 970.)

"In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 164–165 [80 Cal.Rptr.2d 66] (*Sangster*).)

In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the underlying complaint liberally, in a light most favorable to the malicious prosecution defendant. (*Sangster, supra*, 68 Cal.App.4th at p. 165.) Construing the allegations of Powell's underlying complaint in the light most favorable to her, it is clear that there was not probable cause to support at least some of the 18 causes of action alleged on Powell's behalf.[9]

The causes of action alleged on behalf of all of plaintiffs included negligence in failing to manage, repair and/or maintain the property; breach of contract based on allegations that Sycamore Ridge failed to maintain the plumbing, heating, and electrical systems in satisfactory condition, as required by the terms of the leases; and breaches of the warranty of habitability

---

[9] Powell was a named plaintiff in a complaint that made no distinctions among the 45 named plaintiffs with regard to the 18 separate causes of action. Rather, the complaint stated all 18 causes of action on behalf of each named plaintiff.

and the covenant of quiet enjoyment for failing to water/weatherproof the buildings, installing improper plumbing and gas facilities, and maintaining unclean and/or unsanitary buildings and grounds filled with filth, mold, garbage, rodents, termites, and/or vermin. The complaint also included causes of action for breach of an employment contract, wrongful termination in violation of public policy, and retaliation.

### a. The Naumann defendants

The record suggests that Powell had limited complaints about Sycamore Ridge prior to the filing of the lawsuit. Although Powell had initially indicated that she suffered from some of the physical ailments identified in the solicitation letter, her main complaint appeared to be that Sycamore Ridge failed to return her security deposit after she moved out. However, Powell had previously sued Sycamore Ridge on that claim in small claims court and lost. In a declaration, Powell attests that she experienced "repeated sinus congestion, watery and/or itchy eyes, headaches (severe) and fatigue while living at Sycamore Ridge," and that she "experienced heating problems with [her] apartment and often had to turn on the oven to adequately heat [her] home." She states in her declaration that she "discussed these problems with the attorneys, and also the issue of Sycamore Ridge failing to return the security deposit." Powell does not mention ever having discussed any other complaints about Sycamore Ridge with the attorneys at Naumann & Levine, LLP. Further, there is no evidence in the record to suggest that Powell was ever an employee of Sycamore Ridge, or that she had complaints about Sycamore Ridge related to having been employed there.

Despite the very limited complaints Powell discussed with the Naumann attorneys, the Naumann defendants alleged 18 different causes of action on her behalf—the great majority of which had nothing to do with any of the concerns Powell had discussed with them. Under these circumstances, it is difficult to conclude that a reasonable attorney would have believed that Powell had tenable claims under many of the causes of action alleged in the complaint as filed.

Regardless of whether the facts known to the Naumann defendants at the time they initiated the action on Powell's behalf supported all of the legal theories presented in the complaint, it became clear after Powell provided responses to the interrogatories that she was not claiming any physical injuries or property damage. Further, her allegations of emotional distress were tied to Sycamore Ridge's supposed "dishonesty," and not to any issues attributable to mold. In her interrogatory responses, Powell answered "Yes" to the question, "Do you attribute any physical, mental, or emotional injuries to the INCIDENT?" However, when Powell was then asked to identify each

injury she attributed to Sycamore Ridge's conduct, she responded, "The owner and staff have caused me mental and emotional distress because of their dishonesty." Thus, although Powell had initially indicated to the Naumann attorneys that she had suffered some physical problems while living at Sycamore Ridge, she did not claim *any* physical injuries in her discovery responses. Additionally, when asked "Do you still have any complaints that you attribute to the INCIDENT," Powell answered "No." Powell further denied that she had been examined by any health care provider or that she had received advice or treatment from any health care provider. She also denied that she had taken any medications, or that she had required other medical services as a result of any injury she attributed to the "INCIDENT."

In response to the question, "Do you attribute any loss of or damage to a vehicle or other property to the INCIDENT?" Powell answered, "No." In response to the question, "Do you attribute any loss of income or earning capacity to the INCIDENT?" Powell answered "No." In response to almost every question concerning whether or not she had been injured or had suffered a loss, Powell answered, "No" or "Not that I know of." Again, Powell deviated from her denials in response to only one additional inquiry, other than the original question that asked whether she was claiming any physical or emotional injuries. When asked to identify, describe and give the date of every act or omission she claimed constituted a breach of the lease agreement, Powell stated that she "fe[lt] that the apartment at 2425 Hibiscus Ave[.], # 270 . . . [wa]s unsuitable to live in." However, Powell did not explain why she believed the apartment was not habitable, and offered no evidence that would demonstrate any factual support for this claim. Powell's subjective feelings about her apartment are insufficient to support a cause of action for breach.

Powell's interrogatory responses established that she was not claiming to have suffered any physical injuries, property damage, or lost income, and that there was no factual support for her generalized assertions of emotional injury or of the "unsuitability" of her apartment. Yet the Naumann defendants not only did not dismiss Powell's causes of action based on personal injury and/or property damage, but they took the affirmative step of filing a statement of damages on her behalf. The assertions in the statement of damages were unsupported by, or even inconsistent with, the discovery responses Powell had previously given: The statement of damages alleged that Powell had suffered $20,000 in emotional distress damages, despite the fact that she provided no factual support for her blanket assertion of emotional distress and acknowledged that she had required no medical treatment for any injuries she claimed to have suffered; $2,000 in property damage, despite the fact that she asserted in her interrogatory responses that she had incurred no property damage at all; and an unspecified dollar amount, to be determined at a later date, for loss of future earning capacity, despite the

fact that she had specifically stated in her discovery responses that she had suffered no loss of future earning capacity. The statement of damages also claimed $50,000 in punitive damages, although the basis to support such an award is unclear from Powell's discovery responses.

After Powell responded to Sycamore Ridge's initial discovery requests in September 2003, there was simply no factual basis to support a number of the causes of action alleged on Powell's behalf in the complaint. Powell had no complaints about mold or other health concerns at Sycamore Ridge, and did not assert that any of her property had been lost or damaged during her stay at Sycamore Ridge. By failing to assert any claim of physical injury, Powell acknowledged that she was not claiming to have suffered from any of the physical injuries alleged in the complaint, which included "ear infections; lung infections; eye irritations; kidney dysfunction; otitis; sinus infections; yeast infections; skin infections; nail infections/destruction, and destruction of bodily tissues and systemic diseases." It also became clear that Powell was not claiming damages for any "costs of repair and/or reconstruction" or "physical injury" in relation to a negligence cause of action, yet these allegations were also made on her behalf.

Powell also did not contend that Sycamore Ridge had improperly withheld her security deposit. While Powell stated that Sycamore Ridge's "owner and staff" had caused her emotional distress because of their "dishonesty," she did not attribute this distress to the improper retention of her security deposit, and she did not indicate anywhere in her discovery responses that she had suffered damage as a result of Sycamore Ridge's withholding of her security deposit. These responses establish that Powell had no grounds to bring any of the causes of action relating to the collection or retention of a security deposit.[10] In addition, Powell did not assert that her tenancy had been unlawfully terminated, as alleged in the 13th cause of action, nor did she allege that she had ever been employed by Sycamore Ridge, that Sycamore Ridge had wrongfully terminated her employment, or that she had suffered retaliation at the hands of Sycamore Ridge, as alleged in the 14th, 15th and 16th causes of action.

In response to the question "DO YOU OR ANYONE ACTING ON YOUR BEHALF contend that any person involved in the incident violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT," Powell answered "No." She thus denied that she had any personal claims for violations of statutes or regulations, which were

---

[10] The issue whether Sycamore Ridge unlawfully retained Powell's security deposit had previously been decided against Powell in the small claims action, in which she sued for a violation of Civil Code section 1950.5. For this reason as well, Powell's claim under Civil Code section 1950.5 in the action filed by the Naumann defendants was wholly without merit.

alleged in the second cause of action, for negligence per se based on violations of "statutes, ordinances, and/or regulations" including Civil Code sections 1941, 1941.1, 1950.5, and 1950.7; the fifth cause of action, for unfair business practices pursuant to Business and Professions Code section 17200 et seq.; the 10th cause of action, for violation of Civil Code section 1942.4; the 11th cause of action, for violations of Civil Code sections 1950.5 and 1950.7; and the 13th cause of action, for violations of 42 United States Code section 1437 et seq. and 24 Code of Federal Regulations part 982 et seq. (2007).

There was no probable cause to support most of the causes of action alleged in the complaint as to Powell. The Naumann attorneys nevertheless continued to prosecute the action on Powell's behalf until November 2004—over 10 months after Powell verified her interrogatory responses. Sycamore Ridge has demonstrated a sufficient prima facie showing of facts to support its allegation that defendants lacked probable cause to maintain a number of the claims they alleged on Powell's behalf.

### b. *The LaFave defendants*

The trial court determined that the LaFave defendants' late entry into the case was sufficient to insulate them from Sycamore Ridge's malicious prosecution action. We conclude that the LaFave defendants cannot escape potential liability simply because they entered the case after it was well underway, and shortly before it was dismissed. One may be liable for malicious prosecution for prosecuting an action even if he or she did not institute the action. (*Lujan v. Gordon, supra,* 70 Cal.App.3d at p. 264 (*Lujan*) ["There does not appear to be any good reason not to impose liability upon a person who inflicts harm by aiding or abetting a malicious prosecution which someone else has instituted"].)[11] Further, as noted above, one may be held liable for malicious prosecution for continuing to prosecute an action after discovering that the action lacks probable cause. (*Zamos, supra,* 32 Cal.4th at p. 970.) Thus, although the LaFave defendants did not institute the action on Powell's behalf, this fact does not insulate them from potential liability.

---

[11] In *Lujan,* the malicious prosecution plaintiff named as defendants Gordon and Lipstone, two attorneys who had not instituted the underlying action. (*Lujan, supra,* 70 Cal.App.3d at p. 262.) The malicious prosecution plaintiff alleged that the attorney who filed the lawsuit, Jacoves, had acted as an agent of Gordon and Lipstone. (*Ibid.*) Gordon and Lipstone demurred to the complaint, contending that the record did not establish that they could be liable for malicious prosecution because the file showed that their firm, Gordon, Lipstone & Jacoves, had not been substituted in for Jacoves in the case. (*Ibid.*) The court noted that the file contained a number of documents filed on the plaintiff's behalf with "the caption the name of 'Law Offices Gordon, Lipstone & Jacoves' as 'attorneys for plaintiff.'" (*Id.* at pp. 262–263.) The court framed the relevant question as "whether the alleged participation of Gordon and Lipstone commencing June 28, 1973, may subject them to any [malicious prosecution] liability," and answered that question in the affirmative. (*Id.* at p. 263.)

Before agreeing to become attorney of record in a pending case, an attorney should, at a minimum, be familiar with the client's claims and should have made a preliminary determination whether probable cause exists to support the asserted claims or defenses. By associating into the case as cocounsel, the LaFave defendants became the proponents of all of Powell's claims, which included a large number of claims that were untenable on their face. The LaFave defendants thus either knew or should have known of the significant deficiencies in Powell's claims at the time they associated into the case, and there is no evidence indicating that the LaFave defendants took immediate steps to dismiss the meritless claims upon associating into the case. Under these circumstances, Sycamore Ridge has made a sufficient showing that the probable cause prong of its malicious prosecution claim against the LaFave defendants has the "minimal merit" necessary to defeat the LaFave defendants' anti-SLAPP motion.

3. *Sycamore Ridge presented evidence demonstrating a probability that it would prevail on the element of malicious intent*

a. *The Naumann defendants*

The malice element of the malicious prosecution tort goes to the defendant's subjective intent in initiating the prior action. (*Sheldon Appel, supra,* 47 Cal.3d at p. 874.) For purposes of a malicious prosecution claim, maice "is not limited to actual hostility or ill will toward the plaintiff. Rather, malice is present when proceedings are instituted primarily for an improper purpose." (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157 [85 Cal.Rptr.2d 726] (*Sierra Club*).) "Suits with the hallmark of an improper purpose" include, but are not necessarily limited to, "those in which: ' ". . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' " (*Id.* at p. 1157.)

Evidence tending to show that the defendants did not subjectively believe that the action was tenable is relevant to whether an action was instituted or maintained with malice. (See *Sheldon Appel, supra,* 47 Cal.3d at p. 881.) Additionally, "if the trial court determines that the prior action was not objectively tenable, the extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice." (*Id.* at p. 883.)

Addressing the factors discussed in *Sierra Club, supra,* 72 Cal.App.4th at page 1157, there is abundant evidence that the Naumann defendants continued to prosecute this action on Powell's behalf despite being aware that there was no basis for most of her claims.[12] Sycamore Ridge presented evidence that the Naumann defendants were aware of the lack of facts to support the majority of Powell's claims, since the Naumann attorneys were the ones who prepared Powell's interrogatory responses and Powell attested to their truth. The evidence suggests that the Naumann defendants were aware of facts demonstrating that Powell had no compensable claims under most of the causes of action alleged in the complaint, and that there was no sufficient factual basis to support her claim that she had suffered more than $22,000 in damages and that she should receive an additional $50,000 in punitive damages. Yet, the Naumann defendants continued to pursue the action on Powell's behalf. From the evidence Sycamore Ridge presented, one could infer that the Naumann defendants were at best indifferent as to whether the claims alleged on Powell's behalf had any basis in fact.

There is also evidence that would support the conclusion that the proceedings were initiated and maintained in order to force Sycamore Ridge to enter into a settlement, unrelated to the merits of Powell's claims. (See *Sierra Club, supra,* 72 Cal.App.4th at p. 1157.) The statement of damages was filed after Powell had provided responses to the interrogatories in which she stated that she had suffered no compensable personal injuries and no property loss. The only harm Powell claimed to have suffered was "emotional distress" as a result of unspecified dishonesty on Sycamore Ridge's part. Powell's discovery responses do not support the dollar figures set forth in the statement of damages the Naumann defendants filed on Powell's behalf.

Even if one were to assume that the Naumann attorneys filed the statement of damages in error or that some sort of mixup caused them to erroneously assert unsupported damages allegations on Powell's behalf, it was clear after they had prepared and served interrogatory responses that there was no basis for the majority of her claims. Nevertheless, defendants did not dismiss those claims until more than a year later. Once it became clear that there was no basis for a number of Powell's claims, defendants should have dismissed the claims immediately. "Continuing an action one discovers to be baseless

---

[12] Although the court in *Sierra Club, supra,* 72 Cal.App.4th at page 1157, referred to "proceedings [that] are *initiated*" (italics added) for an improper purpose, it is clear that continuing to prosecute an action for an improper purpose can also render one liable for malicious prosecution. (See *Zamos, supra,* 32 Cal.4th at p. 973 ["[m]alicious prosecution, we hold, includes continuing to prosecute a lawsuit discovered to lack probable cause"]; see also *Paramount, supra,* 213 Cal.App.3d at p. 366, fn. 2 ["A person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution"].)

harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset." (*Zamos, supra,* 32 Cal.4th at p. 969.)

Further, this case has a number of "hallmark[s]" (*Sierra Club, supra,* 72 Cal.App.4th at p. 1157) of a suit brought for an improper purpose. The Naumann attorneys appear to have employed a "shotgun" approach from the outset of the litigation, sending contingency fee agreements to potential plaintiffs whom they had never met and with whom they had never spoken, and naming all who responded to the solicitation letter in all counts of the complaint they filed against Sycamore Ridge—whether or not there was a factual basis for the claims. A reasonable inference based on the evidence is that Powell's claims, which included 15 causes of action that had no support in fact, were brought for an improper purpose, within the meaning of *Sierra Club, supra,* 72, Cal.App.4th at page 1157. At a minimum, the record discloses that the Naumann attorneys failed to conduct any reasonable investigation with regard to Powell's complaints, and that they served a statement of damages on Sycamore Ridge that had no apparent basis in fact.

### b. *The LaFave defendants*

The same evidence that supports Sycamore Ridge's opposition to the Naumann defendants' anti-SLAPP motion also establishes a sufficient showing of malice for the limited purpose of defeating the LaFave defendants' special motion to strike. "Malice 'may range anywhere from open hostility to indifference.' [Citations.]" (*Soukup, supra,* 39 Cal.4th at p. 292.) While the mere absence of probable cause, without more, "is not sufficient to demonstrate malice" (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 498–499, fn. 29 [78 Cal.Rptr.2d 142]), " '[m]alice may also be inferred from the facts establishing lack of probable cause.' [Citation.]" (*Soukup, supra,* 39 Cal.4th at p. 292.) As we discussed earlier, "[T]he extent of a defendant attorney's investigation and research may be relevant to the further question of whether or not the attorney acted with malice." (*Sheldon Appel, supra,* 47 Cal.3d at p. 883.)

The complaint in this case contains a number of claims that are clearly untenable. If the LaFave defendants knew the relevant facts and did not take immediate steps to dismiss Powell's unmeritorious claims, one could infer that the continued prosecution of those claims was motivated by a malicious intent. If the LaFave defendants were not aware of the relevant facts because they failed to adequately familiarize themselves with the case before associating in as cocounsel, this would indicate a degree of indifference from which one could also infer malice. (See *Sheldon Appel, supra,* 47 Cal.3d at p. 883.)

The LaFave defendants contend that Powell made the decision not to pursue her case a month before they associated into the case, and that they cannot therefore be considered to have prosecuted her claims. However, Powell's asserted intention not to pursue her claims was apparently not disclosed to Sycamore Ridge prior to the LaFave defendants' entry into the case. Rather, the case remained open for approximately a month after the LaFave defendants associated into the action. The LaFave defendants' associating into the case without disclosing to Sycamore Ridge an intention to dismiss Powell's claims relayed the message to Sycamore Ridge that not only would prosecution of the case continue, but that the case would now be prosecuted by additional attorneys who were coming into the litigation for their expertise.

 Maintaining a case one knows, or should know, is untenable continues to harm the defendant as long as the case remains open, since the defendant must continue to prepare a defense to the case as long as the case appears to be moving forward. An attorney who associates into a case that is being maliciously prosecuted participates in harming the defendant for the time period that the attorney allows the untenable claims to remain alive. Thus, contrary to the assertions in the concurring and dissenting opinion, the liability of an attorney who associates into a case in which untenable claims are being prosecuted is based not on the "prior mistakes of others" (conc. & dis. opn., *post*, at p. 1414), but, rather, on that attorney's own participation in that case.

The LaFave defendants claim that their role in the litigation was to be "limited to the mold exposure aspect of the litigation," and that they "did not have any input in the decision to file against Sycamore and [were] not involved in deciding which plaintiffs to include in the lawsuit or what allegations were made." They assert that, "[a]t all times, LaFave believed that the lawsuit against Sycamore was supported by probable cause and certainly was not being prosecuted with malice or ill will by anyone."

An attorney's assertion that he or she did not initiate a lawsuit and that his or her participation in the case was to be limited in time and scope does not eliminate the attorney's potential liability for malicious prosecution. (Cf. *Soukup, supra,* 39 Cal.4th at p. 297 [noting that an attorney defendant "cannot insulate himself from [malicious prosecution] liability, as a matter of law, simply because he asserts that his role in the underlying action was limited to that of appellate counsel"].) As stated above, by associating into a case as cocounsel, an attorney becomes the proponent of his client's claims.

The act of associating into a case as cocounsel carries with it at least the responsibility to be familiar with the claims made by one's clients in the litigation.[13]

The LaFave defendants claim that their role in the litigation was limited and that they were not involved in deciding which plaintiffs to include in the case or what allegations were made. However, their protestations that they believed the claims in the lawsuit were supported by probable cause and that they harbored no malice do not establish, as a matter of law, that Sycamore Ridge cannot prevail on these elements of its malicious prosecution action. None of the LaFave defendants' assertions negate the fact that they formally associated into the case and that Powell's claims remained active for approximately a month after their entry into the case, despite the obvious failings of Powell's complaint.

### 5. *Sycamore Ridge sufficiently established that it was damaged by defendants' conduct*

Both the Naumann and LaFave defendants argue that Sycamore Ridge did not present sufficient evidence that it was damaged by the prosecution of Powell's complaint and, therefore, that Sycamore Ridge cannot establish a prima facie case of malicious prosecution. The Naumann defendants contend that Sycamore Ridge cannot establish that it suffered damages because it continued to litigate the claims of the remaining plaintiffs until settlement and therefore lost nothing by also litigating Powell's case under the same complaint at the same time. The LaFave defendants contend that because they had no involvement in filing the original litigation and "did not do anything with regard to continuing the litigation of the Powell claim," Sycamore Ridge could not have suffered any damages as a result of the LaFave defendants' conduct. We disagree with defendants' contentions.

First, defendants cite no authority establishing that a malicious prosecution plaintiff must present evidence of the facts supporting the damages claimed in order to establish a probability of prevailing. Rather, the weight of authority holds that in order to prevail, a malicious prosecution plaintiff must establish three elements, i.e., that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in plaintiff's favor, (2) was brought without probable cause, and (3) was initiated with malice. (See, e.g., *Crowley, supra,* 8 Cal.4th at p. 676.) In order to be granted monetary relief, a malicious prosecution plaintiff must also prove damages. However, there is no requirement that, for purposes of

---

[13] If this were not so, an attorney could associate into a clearly unmeritorious case with impunity, as long as the attorney was careful not to become familiar with the claims or the evidence.

surviving an anti-SLAPP motion, a malicious prosecution plaintiff must provide specific evidence of the extent of the damages suffered. A malicious prosecution claim is actionable precisely because the malicious prosecution is presumed to have injured the defendant in the underlying action: "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings." (*Bertero, supra*, 13 Cal.3d at pp. 50–51.)

██ Further, there is sufficient evidence in this record to support Sycamore Ridge's assertions that it suffered damages as a result of Powell's claims. A plaintiff who successfully asserts a malicious prosecution claim can obtain reasonable attorney fees incurred defending against the prior action, and may also recover compensation for injury to reputation or impairment of social and business standing in the community. (*Bertero, supra*, 13 Cal.3d at pp. 59–64.) The record is replete with evidence that Sycamore Ridge's attorneys spent time defending against Powell's complaint. Attorneys for Sycamore Ridge propounded discovery on Powell, scheduled a number of depositions with Powell, and spent time ensuring that Powell's claims were ultimately dismissed. Further, there is no evidence that Sycamore Ridge waived its right to attorney fees.

With regard to the LaFave defendants' argument, although the damages Sycamore Ridge suffered during the time the LaFave defendants were involved in Powell's case may be small in relation to the damages it suffered during the course of the entire Powell lawsuit, it is not clear that Sycamore Ridge suffered *no* damages as a result of the LaFave defendants' conduct in continuing to prosecute Powell's claims.

IV.

DISPOSITION

That portion of the trial court's order denying the Naumann defendants' anti-SLAPP motion is affirmed. That portion of the order granting the LaFave defendants' anti-SLAPP motion is reversed. The trial court's order awarding attorney fees and/or costs to the LaFave defendants as the prevailing parties

on the anti-SLAPP motion is also reversed. Costs on appeal are awarded to appellant Sycamore Ridge.

McDonald, J., concurred.

**HUFFMAN, Acting P. J.,** Concurring and Dissenting.—In this malicious prosecution case, the trial court correctly assessed the likelihood plaintiff could prevail against two sets of attorneys. The trial court properly concluded plaintiff had met its burden of proof to show likelihood of prevailing against the Naumann attorneys who filed the underlying lawsuit and who prosecuted it until the lawsuit was ultimately dismissed. The majority of this court correctly affirms the decision as to the Naumann attorneys. I agree completely with the majority as to those attorneys.

The case against the LaFave attorneys, however, does not begin to show a probability of success. The underlying case giving rise to the malicious prosecution allegation was filed by the Naumann attorneys in June 2003. The LaFave group was not involved in the filing of that lawsuit. Indeed the LaFave group first associated into the underlying case on October 5, 2004, for the limited purpose of dealing with any issues regarding mold in the apartments. Their appearance was well after the filing of the action and after all discovery responses were sent out.

The majority points out that in October 2004 the Naumann attorneys wrote to their client, Ms. Powell, confirming a conversation in which Powell had advised she wanted to dismiss her case. The case was dismissed without prejudice November 19, 2004. After some settlement discussions Powell dismissed her case with prejudice on January 20, 2005.

One might ask based upon this chronology what is it that the LaFave defendants might have done during their brief appearance in the underlying case to demonstrate a probability of proving malicious prosecution on their part. A diligent search of this record will answer the question; they did nothing save associating into the case 17 days before the client's (Powell) wish to dismiss the action was documented. What happened in the 17 days in which LaFave was associated with the case? The answer is nothing other than filing an association of counsel.

As the majority properly notes, malicious prosecution can be shown by the commencing of the action or by pursuing the matter even if the attorney joined the case at a later time. (*Paramount General Hospital Company v. Jay* (1989) 213 Cal.App.3d 360, 366, fn. 2 [261 Cal.Rptr. 723], disapproved on other grounds in *StaffPro, Inc. v. Elite Show Services, Inc.* (2006) 136 Cal.App.4th 1392, 1404 [39 Cal.Rptr.3d 682].)

While the principle cited by the majority is correct, one must wonder what evidence there is in this record that LaFave did anything other than associate into the case very shortly before the decision to dismiss the lawsuit. Once again, the answer is nothing.

The majority does not cite to any evidence regarding LaFave other than their mere late association into the case for a limited purpose. Indeed the analysis supporting the majority decision to overturn the trial court's ruling is contained in a single paragraph in an otherwise lengthy opinion. That analysis in my view is simply a bald assertion that an attorney associates into a case at his or her own peril. The principle declared by the majority without citation to authority is that an attorney is chargeable with knowledge of the defects in the case at the very moment of formal appearance.

In my view the majority opinion, if it becomes final, imposes a principle of strict liability at least for the purposes of determining whether a plaintiff has met the burden of proof to overcome an anti-SLAPP motion to strike.

This case illustrates the significant risk an attorney will take if one associates into a case even for a very limited role. The majority declares "[b]y associating into the case as cocounsel, the LaFave defendants became the proponents of all of Powell's claims, which included a large number of claims that were untenable on their face." (Maj. opn., *ante*, at p. 1407.)

If mere association no matter how limited the purpose with nothing else added will automatically attach responsibility for errors that have gone before, then an attorney should be very reluctant to provide any assistance in a previously filed case unless that attorney is willing to assume responsibility for the prior mistakes of others.

I cannot accept the proposition that a lawyer who associates into ongoing litigation to provide a limited service and does nothing else can be said to have "pursued" a malicious prosecution.

Certainly attorneys who join a wrongfully filed case can gain responsibility for knowingly perpetuating that meritless lawsuit. I submit, however, that there must be some evidence of conduct other than signing an association of counsel form before one acquires liability for the acts which have gone before. I believe that is particularly true in this case where the only thing that happened shortly after the association by the LaFave group was that the case was dismissed. There is absolutely no showing the LaFave defendants took any action to "pursue" the underlying litigation.

The trial court correctly determined plaintiff had not shown a likelihood of prevailing against the LaFave defendants unless of course the majority's

newly created doctrine of strict liability becomes the law of California. Because I believe such result is neither warranted by the law or sound policy, I therefore dissent from that portion of the opinion dealing with the LaFave defendants.

A petition for a rehearing was denied January 7, 2008, and the petitions of defendants and appellants and defendants and respondents for review by the Supreme Court were denied March 19, 2008, S160268. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that petition of defendants and respondents should be granted.