Filed 7/7/14  Chavez v. Meneshke Law Firm CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| FEDERICO CHAVEZ et al., | H038557 |
| Plaintiffs and Respondents, | (Santa Cruz County Super. Ct. No. CV172811) |
| v. | |
| MENESHKE LAW FIRM et al., | |
| Defendants and Appellants. | |

Defendants appeal from the denial of their anti-SLAPP[1] motions (Code Civ. Proc., § 425.16) seeking dismissal of plaintiffs' malicious prosecution action.  Defendants claim that the court should have granted their motions because plaintiffs did not establish a probability of prevailing.  They argue that plaintiffs did not make a prima facie showing that (1) the prior lawsuit, an action for indemnity by defendants against plaintiffs that defendants voluntarily dismissed with prejudice, was terminated in plaintiffs' favor, (2) defendants lacked probable cause for the indemnity action, and (3) defendants initiated the indemnity action with malice.  We conclude that plaintiffs demonstrated that they had a probability of prevailing on their malicious prosecution cause of action.  Accordingly, we affirm the superior court's order.

---

[1]     "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Simpson Strong-Tie Company, Inc. v. Gore* (2010) 49 Cal.4th 12, 16, fn. 1.)

## I. Background

Defendants Jeffrey and Dora Solinas (Solinas)[2] leased an office in a building they owned in Watsonville to plaintiffs Federico and Rafael Chavez "dba Truck Driving Institute" (Chavez) in 1997.[3] The lease described the "demised premises" as "OFFICE 1150 MAIN ST. SUITE No. 8." Suite 8 was on the second floor of the building and was accessible only by an exterior stairway. Solinas at all times took responsibility for maintaining the stairway. The lease required Chavez to maintain the "demised premises" and "such portions adjacent to the premises, such as sidewalks, driveways, lawn and shrubbery" in "good condition." The lease also provided: "Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring on the demised premises or any part thereof, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused."

In November 2004, the City of Watsonville notified Solinas of numerous code violations at 1150 Main Street. Several of these code violations pertained to the stairway to the second floor. The treads were worn, were not slip resistant, and were "recessed," thereby creating a "trip hazard." The risers were open and were not uniform in height. Solinas was notified of the specific deficiencies and ordered to correct the violations within 90 days. A few months later, Solinas began the process of looking into correcting the deficiencies. An engineer he consulted recommended that the stairway be replaced, but no immediate action was taken.

In December 2005, Maria Chavez-Bello, sister of the Chavezes, visited one of her brothers at the 1150 Main Street, Suite 8 office. Solinas had not repaired or replaced the

---

[2]     Defendant Plazita Medical Clinic (Plazita) is owned by the Solinases. It also had an office in the 1150 Main Street building. We will refer to the Solinases and Plazita jointly as Solinas.

[3]     Chavez operated a business in the leased office from 1997 through 2010. Solinas terminated the lease in November 2010.

2

stairway.[4] After Chavez-Bello left Chavez's second floor office, she fell down the stairway and was seriously injured. In December 2007, Chavez-Bello filed a negligence and premises liability action against Solinas seeking damages for her injuries. Chavez-Bello's action was based on Solinas's failure to remedy the code violations after the City notified him of them. Solinas's insurer, defendant California Capitol Insurance Company, Inc. (CIC), retained defendants Meneshke Law Firm, Ayhan M. Meneshke, and Patricia Boyes (Meneshke) to represent Solinas in the Chavez-Bello action.

On August 20, 2009, Meneshke filed a motion on Solinas's behalf seeking an order shortening time for a hearing on a request for leave of court to file a cross-complaint for indemnity against Chavez in the Chavez-Bello action. Meneshke attached a declaration to his motion in which he stated that he had realized that an indemnity cause of action existed only after Chavez-Bello testified at her deposition on August 9, 2009 that she had gone to the building to visit her brother. Meneshke also claimed that he did not previously notice the lease provision regarding indemnity. Chavez-Bello's attorney opposed the request and produced indisputable evidence that CIC and Meneshke had long known of the reason for Chavez-Bello's visit to the building that day. On August 21, the court denied the request on the ground that there had been no showing of good cause for the "11th hour" request.

On August 25, 2009, Meneshke sent to Chavez on Solinas's behalf a demand for indemnity in the Chavez-Bello action. At that time, the Chavez-Bello action was scheduled for trial on September 14, 2009. On September 1, 2009, Meneshke filed a complaint on behalf of Solinas against Chavez for indemnity, breach of contract, and negligence (the indemnity action).[5] The indemnity action alleged that Chavez was required under the lease to indemnify Solinas for any damages suffered by Chavez-Bello

---

[4]     Solinas replaced the stairway in 2007 or 2008.

[5]     The complaint was essentially identical to the proposed cross-complaint.

and to reimburse Solinas for any attorney's fees and costs incurred in the Chavez-Bello action.[6]

The Chavez-Bello action was ultimately tried to a jury in September 2010, and Chavez-Bello obtained a judgment for over $800,000 against Solinas. CIC subsequently negotiated a settlement of the Chavez-Bello action.

In April 2011, Meneshke dismissed with prejudice the indemnity action against Chavez. In December 2011, Chavez filed a malicious prosecution action against Solinas, Meneshke, and CIC. Solinas, Meneshke, and CIC filed special motions to strike the malicious prosecution cause of action under Code of Civil Procedure section 425.16.

Meneshke's motion claimed that Chavez would not be able to show a lack of probable cause, a necessary element of malicious prosecution, because the lease itself provided probable cause. He maintained that Chavez would not be able to show that the indemnity action had terminated in Chavez's favor due to lack of merit, another requisite element of malicious prosecution, because the dismissal of the indemnity action occurred due to the settlement of the Chavez-Bello action and Solinas's desire to avoid unnecessary expenses. Meneshke's argument in this respect depended solely on his own declaration. Meneshke declared: "Due to that settlement, [CIC] did not want to continue to pursue the indemnity claims against [Chavez] but wanted to close its file on the case, and the Solinas defendants were unwilling and unable to pursue the case themselves at their own expense. [CIC] instructed [Meneshke] to dismiss the indemnity lawsuit with prejudice and [Meneshke] did so." Meneshke also declared: "The decision to dismiss the indemnity lawsuit with prejudice was a business decision by [CIC] and in no way

---

[6]     In October 2009, Meneshke filed a motion on Solinas's behalf seeking consolidation of the indemnity action and the Chavez-Bello action. This motion was apparently denied.

4

reflected on a lack of merit of that lawsuit."[7]  Meneshke claimed that he at all times believed that the lease obligated Chavez to indemnify Solinas.

Solinas's motion claimed that Chavez would not be able to establish any of the elements of malicious prosecution.  He produced no evidence other than Meneshke's declaration in support of his argument regarding the favorable termination element, instead claiming that Chavez would not be able to produce admissible evidence of a favorable termination.  Solinas relied on the lease to support his argument that there was probable cause for the indemnity action.  He claimed that there was no evidence of malice because the indemnity action was intended to obtain indemnity.  CIC's motion was premised solely on its contention that Chavez would not be able to show a lack of probable cause.

Chavez opposed the motions.  He objected on competence, hearsay, and foundation grounds to the portion of Meneshke's declaration concerning CIC's rationale for requesting dismissal of the indemnity action and Solinas's reasons for not pursuing it himself.  Chavez renewed this objection at the hearing on the motions.  The superior court did not expressly rule on this objection.

In support of his opposition, Chavez asked the court to take judicial notice of a number of documents, including portions of Solinas's deposition testimony.  Solinas had testified at his deposition that he maintained the stairway and that he had not yet

---

[7]  CIC asks this court to take judicial notice under Evidence Code section 452, subdivision (g) "that it is common practice for liability insurance carriers to close a file without pursuing indemnity rights because such carriers put great value on closing claims files."  CIC provides no support for the alleged indisputability of this proposition.

Evidence Code section 452, subdivision (g) permits judicial notice of "[f]acts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute."  Since CIC has provided no support for its claim that this proposition is a matter of common knowledge, and we are aware of none, we reject its request.

5

corrected the code violations at the time of Chavez-Bello's fall despite the fact that he had known of the code violations for a year.

The court found that Chavez had shown a probability of prevailing and denied the motions to strike. Meneshke, CIC, and Solinas timely filed notices of appeal.

## II. Analysis

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).)

" 'Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278-279 (*Soukup*).)

"To establish a probability of prevailing, the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] For purposes of this inquiry, 'the trial court considers the

6

pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.] In making this assessment it is 'the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . .' [Citation.] The plaintiff need only establish that his or her claim has 'minimal merit' . . . ." (*Soukup*, *supra*, 39 Cal.4th at p. 291.) "In assessing the probability of prevailing, a court looks to the evidence that would be presented at trial, similar to reviewing a motion for summary judgment; a plaintiff cannot simply rely on its pleadings, even if verified, but must adduce competent, admissible evidence." (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 613-614.) Our standard of review is de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

"To prevail on a malicious prosecution claim, the plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup*, *supra*, 39 Cal.4th at p. 292.)

## A. Favorable Termination

Defendants claim that Chavez failed to submit admissible evidence that could have supported a finding that the prior action was terminated in his favor.

"A voluntary dismissal is *presumed* to be a favorable termination on the merits, unless otherwise proved to a jury." (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1400, italics added.) Therefore, defendants' voluntary dismissal of the indemnity action is presumed to be a favorable termination on the merits unless defendants established otherwise as a matter of law. They did not. The only evidence defendants produced on the favorable termination issue was Meneshke's

7

declaration. Chavez objected on hearsay and foundation grounds to the declaration, which purported to state CIC's and Solinas's reasons for not pursuing the case. Chavez adequately preserved this issue for appellate review (cf. *Reid v. Google* (2010) 50 Cal.4th 512, 526), and he renews it on appeal.[8] We conclude that this portion of Meneshke's declaration was inadmissible because Meneshke failed to show any foundation for his statements based on personal knowledge.

Meneshke declared: "Due to that settlement, [CIC] did not want to continue to pursue the indemnity claims against [Chavez] but wanted to close its file on the case, and the Solinas defendants were unwilling and unable to pursue the case themselves at their own expense. [CIC] instructed [Meneshke] to dismiss the indemnity lawsuit with prejudice and [Meneshke] did so." Meneshke also declared: "The decision to dismiss the indemnity lawsuit with prejudice was a business decision of [CIC] and in no way reflected on a lack of merit of that lawsuit."

While Meneshke's declaration was crafted to avoid explicitly recounting specific hearsay statements, he did not provide any foundation for his alleged personal knowledge of Solinas's or CIC's reasons for the dismissal. Meneshke maintains that his statements were not hearsay because he did not " 'recount "a statement" ' " and did not lack

---

[8] Instead of fully addressing defendants' contentions regarding the favorable termination element, Chavez's appellate brief states that the "analysis [in Chavez's trial court brief] is incorporated herein by this reference thereto." "California Rules of Court, rule 8.204(a)(1)(B) requires that appellate briefs 'support each point by argument and, if possible, by citation of authority.' 'It is well settled that the Court of Appeal does not permit incorporation by reference of documents filed in the trial court. (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 [130 Cal.Rptr.2d 347] ["[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record"].)' (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 295, fn. 20, 46 Cal.Rptr.3d 638, 139 P.3d 30.) A Court of Appeal may refuse to consider arguments incorporated by reference." (*McGuan v. Endovascular Technologies, Inc.* (2010) 182 Cal.App.4th 974, 987.) We decline to consider Chavez's trial court briefs.

foundation because he represented Solinas in the Chavez-Bello action. Meneshke's representation of Solinas did not provide a foundation for Meneshke's personal knowledge of Solinas's reasons for the dismissal other than to imply that Solinas told Meneshke of his reasons, which would be hearsay and would not establish personal knowledge. Meneshke's claim to have personal knowledge of CIC's reasons for directing Meneshke to dismiss the Chavez-Bello action was similarly flawed. He made no foundational showing that he had personal knowledge of CIC's reasons. On the face of his declaration, one could only infer that a CIC representative had told him those reasons, which would be hearsay and would not establish Meneshke's personal knowledge of those reasons. It follows that Chavez's objections to this portion of Meneshke's declaration were valid, and this evidence was inadmissible.

Since a voluntary dismissal is presumed to be a favorable termination, and the only evidence produced by defendants to rebut this presumption was inadmissible, Chavez did not fail to make out a prima facie showing on the favorable termination element.

### B.  Lack of Probable Cause

Defendants contend that Chavez failed to make a prima facie showing that they lacked probable cause for the indemnity action.

The presence or absence of probable cause is a question of law. Probable cause exists if "any reasonable attorney would have thought the claim tenable." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 886 (*Sheldon Appel*).) "[P]robable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 824.) "[T]he probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the

9

attorney subjectively believed that the prior claim was legally tenable." (*Sheldon Appel*, at p. 881.)

The question is whether any reasonable attorney would have thought the lease provided a tenable basis for an indemnity action. The lease indisputably established that the "demised premises" was limited to Suite 8. Nothing in the lease suggested that the "demised premises" included the stairway. While the lease required Chavez to *maintain* the "demised premises" *and* "such portions adjacent to the premises, such as sidewalks, driveways, lawn and shrubbery" in "good condition," the lease's *indemnity* provision did not purport to encompass any damage or injury that occurred on "portions adjacent to the premises."[9] It provided: "Lessor shall not be liable for any damage or injury to Lessee, or any other person, or to any property, occurring *on the demised premises or any part thereof*, and Lessee agrees to hold Lessor harmless from any claims for damages, no matter how caused." (Italics added.)

Since the stairway indisputably was not "any part" of the "demised premises" under the clear provisions of the lease, no reasonable attorney would have believed that the indemnity provision applied. The indemnity provision was explicitly limited to "damage or injury . . . *occurring on* the demised premises or any part thereof." (Italics added.) Chavez-Bello's injuries indisputably "occurr[ed] on" the stairway, which clearly was not "part of" Suite 8. Hence, there was a lack of probable cause for the indemnity action.

Defendants claim that the lease was "sufficiently ambiguous" to permit the introduction of extrinsic evidence to determine its meaning. But the express indemnity cause of action in the indemnity action did not allege that it was based on anything other

---

[9] We need not consider whether a reasonable attorney would have believed that it was legally tenable to claim that the stairway was included in "such portions adjacent to" Suite 8 as the *indemnity provision*, which was the sole basis for the express indemnity cause of action, did not extend to such "portions."

10

than the express language of the lease. Defendants also argue that there may have been probable cause for the negligence cause of action or one of the other causes of action in the indemnity action. That is irrelevant. A malicious prosecution cause of action may succeed even if some of the theories or causes of action in the underlying action were based on probable cause so long as one or more theories or causes of action lacked probable cause. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 679.) Here, the express indemnity cause of action lacked probable cause. Chavez could prevail in his malicious prosecution action based on the lack of probable cause for that cause of action alone.

### C. Malice

Defendants claim that Chavez failed to show that he had a probability of prevailing on the malice element.

"The malice element of malicious prosecution goes to the defendants' subjective intent for instituting the prior case. [Citation.] Malice does not require that the defendants harbor actual ill will toward the plaintiff in the malicious prosecution case, and liability attaches to attitudes that range ' "from open hostility to indifference. [Citations.]" ' [Citation.] Malice may be inferred from circumstantial evidence, such as the defendants' lack of probable cause, supplemented with proof that the prior case was instituted largely for an improper purpose. [Citation.] This additional proof may consist of evidence that the prior case was knowingly brought without probable cause or was brought to force a settlement unrelated to its merits." (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1113-1114.)

Here, defendants initiated the indemnity action without probable cause just before the underlying action brought by Chavez's sister was scheduled to be tried. Solinas was obviously aware of the lease's indemnity provisions much earlier, and the explanation proffered by Meneshke for the late filing was rebutted. A reasonable inference could be drawn from the timing of the indemnity action and its lack of probable cause that

11

defendants filed it for the purpose of trying to force Chavez-Bello to settle her action against Solinas.  Such an improper purpose would qualify as malice.  Chavez did not fail to show a probability of prevailing on the malice element.

### III.  Disposition

The order is affirmed.


_____
Mihara, J.


WE CONCUR:




_____
Elia, Acting P. J.




_____
Grover, J.

12