Filed 4/19/21

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| CITIZENS OF HUMANITY, LLC, et al., | B299469 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 18SMCV00066) |
| v. | |
| OSCAR RAMIREZ et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine Mandel, Judge. Reversed and remanded with directions.

California Anti-SLAPP Project and Mark Goldowitz for Defendants and Appellants Oscar Ramirez and Law Offices of Oscar Ramirez.

Verum Law Group, Sam K. Kim and Yoonis J. Han for Defendants and Appellants Kevin Mahoney and Mahoney Law Group.

Mahoney Law Group, Kevin Mahoney and Joshua D. Klein for Defendant and Appellant Ana Jimenez.

Browne George Ross, Peter W. Ross and Charles Avrith for Plaintiffs and Respondents.

———————————

An employee brought a wage and hour class action against her employer.  Prior to certification, the action was settled.  The employer paid a sum to the employee to resolve her individual claims, and she dismissed the class claims without prejudice, with court approval.  Thereafter, the employer brought the current malicious prosecution action against the employee and her counsel.  The employee and her counsel each moved to strike the action under the anti-SLAPP law (Code Civ. Proc., § 425.16).  The trial court denied the anti-SLAPP motions on the basis that the employer established a prima facie showing of prevailing on its malicious prosecution cause of action.  We disagree.  As the prior action resolved by settlement, the employer is unable to establish the action terminated in its favor as a matter of law.  We therefore reverse and remand for determination of one unadjudicated anti-SLAPP issue, and whether the employee and her counsel are entitled to an award of attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1.    *The Underlying Action*

Because we resolve this appeal on the element of favorable termination, we focus our discussion of the underlying action on the facts and procedure relevant to the termination of the action, and omit the substantial history relating to whether it was pursued with probable cause and/or malice.

### A.    *The Complaint*

Ana Jimenez was an hourly employee of Oheck, LLC, making clothing for Citizens of Humanity, LLC.  In May 2015, Jimenez brought suit against Oheck, Citizens of Humanity, and Eric Kweon (collectively, Oheck) alleging eight causes of action

2

for wage and hour violations.[1]  Jimenez brought this action as an individual and on behalf of all other employees similarly situated.  She also asserted a claim for civil penalties under the Private Attorney General Act (PAGA; Lab. Code, § 2698).  Jimenez was represented by attorneys from two different law firms:  Kevin Mahoney of Mahoney Law Group, APC; and Oscar Ramirez of Law Offices of Oscar Ramirez, PC.

B.    *Jimenez Expresses Interest in Settlement*

At a case management conference in January 2017, the court opened discovery on class issues only, and directed Jimenez to file her motion for class certification by September 29, 2017.

Jimenez was deposed on April 27, 2017.  The parties disputed whether Jimenez was to make herself available for a second day of deposition.  At this point, according to Jimenez, she decided she did not want to pursue the case further and instructed her attorneys to attempt to resolve the case.[2]

---

[1]    Oheck's relationship with Citizens of Humanity, and whether Jimenez was also employed by Citizens of Humanity, was disputed, but is not relevant to this appeal.

Jimenez also named Jerome Dahan as a defendant.  Her claims against Dahan were encompassed by the same settlement agreement as her claims against the other defendants.  Dahan, however, did not join in the current malicious prosecution action.  We therefore do not discuss him further.

[2]    Oheck believes any such decision was motivated by Jimenez's first deposition revealing that her wage and hour claim had no factual basis.  While Jimenez did not go into further detail as to why she declined to pursue her action after her first day of her deposition, we observe that the record discloses one of the many reasons Oheck sought a second day of deposition:  Oheck

3

C.    *Initial Settlement Negotiations Are Unsuccessful*

The parties agreed to put discovery disputes on hold pending settlement negotiations.  May 2017 e-mails between counsel show that both sides were agreeable to a settlement "on an individual basis," which encompassed a payment to Jimenez and a dismissal without prejudice of the class claims.  By June 2017, it appeared that the parties' demands were too far apart, and the case did not settle at this time.

The record does not reflect any further settlement negotiations for approximately five months.

D.    *Issues Arise Regarding Class Notice and a Motion to Strike Class Allegations*

An informal discovery conference was held on October 11, 2017.  The parties were ordered to meet and confer regarding outstanding discovery issues, and the court directed that a notice be sent to the prospective class members by November 1, 2017.[3]  The parties could not agree on the terms of the notice, so, on October 19, 2017, they submitted a joint status report that attached their competing drafts of the notice.  While Jimenez believed the court had "ordered" the notice be sent by November 1, 2017, Oheck believed that date was simply "suggested" by the court.  Oheck planned to file a motion to strike class allegations,

---

wanted Jimenez to answer questions regarding whether she had lied regarding her immigration status on her employment application and I-9 form.

[3]    The anticipated notice would have informed prospective class members of the pending action, and given them an opportunity to decide whether their information would be disclosed to Jimenez's counsel.

4

and proposed that the notice be delayed until resolution of its upcoming motion to strike.

On November 7, 2017, Oheck filed its motion to strike the class and PAGA claims, on the basis that Jimenez lacked standing to pursue them. Specifically, Oheck argued that Jimenez did not herself possess any wage and hour claims, so was unfit to be a class representative. Oheck further argued that the complaint could not be amended to find a more appropriate class representative, because Oheck's policies were compliant with the Labor Code, so "individual issues would predominate."

E.     *The Matter Is Settled*

On appeal, Oheck takes the position that, although Jimenez's *individual claims* were resolved by settlement agreement, the *class claims* were unilaterally voluntarily dismissed, prompted by Oheck's pending motion to strike the class claims. We therefore set forth the facts surrounding whether the parties' settlement encompassed the class claims.

The record does not specifically reflect the date when settlement negotiations reopened, but by November 14, 2017, the parties had an agreement on the amount to be paid Jimenez and were working on a draft settlement agreement.

On November 20, 2017, Jimenez filed a "Notice of Settlement of Entire Case." She checked the box indicating that the settlement was conditional, indicating, "The settlement agreement conditions dismissal of this matter on the satisfactory completion of specified terms that are not to be performed within 45 days of the date of the settlement."

F.    *Oheck Withdraws Its Motion to Strike in Light of the Settlement*

On December 4, 2017, Oheck filed a notice of withdrawal of its motion to strike the class claims. Oheck's motion stated that it withdrew the motion, "in light of the filing of Plaintiff's Notice of Settlement of Entire Case on November 20, 2017."

G.    *The Terms of the Settlement Agreement*

The settlement agreement was executed by all parties and counsel between November 30 and December 13, 2017. It provided for Oheck to pay Jimenez $50,000, with $15,000 of the amount to be paid to Jimenez and the remainder to her attorneys. Jimenez would dismiss her individual claims with prejudice and the class claims without prejudice. Dismissal was required before she would receive the settlement check.[4] Jimenez also released all further claims arising from her employment.

H.    *Jimenez's Request for Dismissal and Court Approval*

On January 4, 2018, Jimenez filed a request for dismissal of class action claims. In it, she sought dismissal of her individual claims with prejudice, and the class and PAGA claims without prejudice.

In language Oheck would later find significant, Jimenez's request, prepared by counsel, stated, "Ultimately, Plaintiff determined it would be in the best interests of the class to dismiss the class allegations and PAGA claims, without

---

[4]    Specifically, the agreement provided, "Oheck, LLC will cause to be paid the Settlement Sum to Plaintiff by mail to Plaintiff's counsel of record within fifteen (15) business days once the appropriate W-9 tax forms are provided to Defendants, the Agreement has been signed by Plaintiff, and after the Court's dismissal of the class representative claims in this action without prejudice and Plaintiff's individual claims with prejudice."

prejudice, thereby preserving the individual claims of the putative class members." The document then has a heading reading, "SETTLEMENT OF INDIVIDUAL CLAIMS." The first sentence under that heading reads, "After determining that the best interests of the class would be preserved by dismissing the class allegations and PAGA claims, the parties discussed a settlement of Plaintiff's individual claims."[5]

Dismissal of a class action requires court approval. (Cal. Rules of Court, rule 3.770(a).) The court requested submission of supplemental evidence demonstrating that the amount of the settlement was fair. On February 15, 2018, Jimenez's counsel submitted a declaration estimating Jimenez's damages at $14,710, comprised of: $4,500 for lost meal and rest breaks; $4,050 for unpaid overtime; $4,000 for inaccurate wage statements; and $2,160 in waiting time penalties. The declaration did not discuss the claims of the class.

On February 26, 2018, the court indicated its approval of the request to dismiss the class claims without prejudice and the individual claims with prejudice. California Rules of Court, rule 3.770(c) provides that if the class action is dismissed prior to certification and/or notice, the action may be dismissed "without notice to the class members if the court finds that the dismissal will not prejudice them." As the court dismissed the class action without prejudice and without notice, it impliedly found the class members would not be prejudiced by the dismissal.

On March 9, 2018, the trial court dismissed the class action without prejudice and Jimenez's individual claims with prejudice.

---

[5] Jimenez's attorney subsequently filed a declaration containing identical statements.

**2.** *The Current Action*

    A.    *The Complaint*

On October 19, 2018 – some seven months later – Oheck filed the current action against Jimenez and one of her attorneys (Ramirez) who had represented her in the underlying action. On March 27, 2019, Oheck filed a Doe amendment naming Attorney Mahoney.[6] The complaint alleged two causes of action. The first, against Jimenez and the attorneys, was for malicious prosecution of the underlying action. The second was against Jimenez alone, seeking sanctions against her under Code of Civil Procedure section 128.5, for allegedly pursuing fraudulent workers' compensation claims. This latter cause of action is not before us on appeal.

As to malicious prosecution, Oheck alleged each element of the cause of action: First, that the underlying action was pursued without probable cause, as Jimenez had been properly paid all wages and had taken all breaks to which she was entitled; and, further, that Jimenez and her counsel were unaware of any other Oheck employee who had a viable wage and hour claim. Oheck alleged also that the underlying action was pursued maliciously, with the purpose of forcing a settlement unrelated to the merits of the claims made. On the key element of favorable termination, Oheck's complaint entirely omitted reference to the settlement. Instead, Oheck alleged, "On November 7, 2017, [Oheck] moved to strike the class claims from the lawsuit, based on overwhelming evidence that Jimenez's claims were fabricated. Rather than oppose the motion, [Jimenez and her counsel] requested dismissal [of] the class claims without

---

[6]    Unless otherwise indicated, references to the individual attorneys include their respective firms.

prejudice. On March 2, 2018, the court granted [Jimenez's] request." It would eventually be revealed that Oheck drafted its complaint in this fashion because it believed the settlement resolved Jimenez's individual claims only, and it was attempting to pursue malicious prosecution only of the class claims.

B. *The Anti-SLAPP Motions*

Jimenez, Attorney Ramirez and Attorney Mahoney each filed separate anti-SLAPP motions. The motions all argued that (1) the malicious prosecution action was based on conduct protected by the anti-SLAPP law, and (2) Oheck could not establish a probability of prevailing on its cause of action. Specifically, although not exclusively, they all argued that Oheck could not establish the "favorable termination" element of malicious prosecution, because the underlying action was actually resolved by settlement.

Oheck's opposition took the position that Jimenez's class claims and her individual claims were two different things – and explained that the action sought recovery for malicious prosecution only of the class claims. Oheck argued that the settlement agreement related only to the individual claims and posited that Jimenez and her counsel had actually decided to voluntarily dismiss the class claims before settlement was even discussed.

In reply, Jimenez and her counsel all argued that they had dismissed the class claims pursuant to the settlement.

At the hearing on the anti-SLAPP motions, the court indicated that Oheck had established a probability of prevailing on the elements of lack of probable cause and malice. Argument quickly turned to whether there was evidence of favorable termination, and, specifically, whether the class claims were

9

encompassed by the settlement.[7] Oheck relied heavily on the statements in Jimenez's request for dismissal which indicated the decision to dismiss the class claims was made prior to entering settlement discussions regarding the individual claims, as well as

[7] Curiously, at one point in the argument, Oheck's counsel seemed to concede that Oheck could not pursue Jimenez for malicious prosecution. The following exchange occurred:

"THE COURT: Before I turn to the other side of the table for their response, let me ask you about the claims versus Jimenez personally, setting aside the claims against the lawyers. I think she stands in a slightly different circumstance than the lawyer defendants do.

"[OHECK'S COUNSEL]: Yes.

"THE COURT: It seems to me that as to her, there was a termination in her favor. You paid her money.

"[OHECK'S COUNSEL]: Right.

"THE COURT: Not you, but your client paid her money, paid her $50,000. How is that not a termination in her favor of at least her individual claims? [¶] Doesn't that preclude you from going after Ms. Jimenez personally for a malicious prosecution claim?

"[OHECK'S COUNSEL]: It doesn't prevent us from going after her on 128.5 with respect to the workers' comp claims, and I think, and I could be wrong, because I've been in trial for about ten days, but I think that that's our only claim against her is on the 128.5 sanctions, and we did settle with her all her claims. [¶] We didn't give her a release of anything, she released us, but we settled, so that's not a favorable termination. But on 128.5 sanctions, we're not required to have a favorable termination. We're seeking sanctions based on what now appears to us to have been two frivolous workers' comp claims where we paid out a total of a hundred thousand dollars."

Neither the trial court in its ruling, nor any of the parties on appeal, addressed this apparent concession.

the fact that the class claims were ultimately dismissed after Oheck filed its motion to strike the class claims. Jimenez and her counsel countered that, from early settlement negotiations in May 2017, it had been agreed that any settlement would encompass the voluntary dismissal of the class claims, but the class claims were not to be actually dismissed until the entire settlement was reached.

Jimenez and her attorneys argued that the court, in its assessment of favorable termination, should consider the action as a whole and not separate the individual and the class claims. Oheck's counsel did not directly respond, but again argued that the settlement agreement constituted a favorable termination for Jimenez on her individual claims, but it did not resolve the class claims "and did not insulate any of the attorney defendants from malicious prosecution."

The court took the matter under submission. On June 17, 2019, the court issued its ruling denying the anti-SLAPP motions. Specifically, it found Oheck had established a prima facie case of malicious prosecution. As to the heavily disputed element of favorable termination, the court adopted Oheck's view of the settlement chronology. The court stated that, after Oheck filed its motion to strike the class claims, "[Jimenez and her attorneys] did not oppose that motion, but requested dismissal of the class claims without prejudice. After [they] agreed to dismiss the class claims, the parties resumed discussions regarding settlement of Jimenez's individual claims." The court concluded that the voluntary dismissal of the class claims implied that "defeat [was] expected."

Jimenez and her counsel filed timely notices of appeal.

11

### *DISCUSSION*

Resolution of the appeal turns on whether Oheck has established a prima face case of the favorable termination element of malicious prosecution. The parties focus the bulk of their argument on the factual aspect of this issue, Oheck's position is that it has demonstrated a "probability of success" under the second prong of the anti-SLAPP statute (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384) because Jimenez dismissed the class claims unilaterally and voluntarily in the belief they were meritless, not that the claims were resolved as part of the settlement agreement.

We believe it is unnecessary to reach this issue. We conclude that in this precertification class action, the class claims are not severable from the individual claims for the purposes of the favorable termination analysis. The entire action terminated by settlement – a termination which was not favorable to Oheck as a matter of law.

### 1. *Anti-SLAPP Law*

"Resolution of an anti-SLAPP motion 'requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the

claim.' [Citation.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)

The parties do not dispute that claims for malicious prosecution fall within the first prong. (See *Citizens of Humanity, LLC v. Hass* (2020) 46 Cal.App.5th 589, 598 (*Citizens of Humanity*).) We therefore turn to whether Oheck has demonstrated a probability of prevailing on its claim for malicious prosecution.

"This second step is a summary-judgment-like procedure. . . . We first determine whether [Oheck's] prima facie showing is enough to win a favorable judgment. . . . This threshold is ' "not high." ' . . . Claims with minimal merit proceed. We accept [Oheck's] evidence as true and do not weigh evidence or resolve conflicting factual claims. . . . We may consider affidavits, declarations, and their equivalents if it is reasonably possible these statements will be admissible at trial. . . . [¶] After examining [Oheck's] evidence, we evaluate Appellants' showings only to determine if they defeat [Oheck's] claim as a matter of law. . . . Appellants can prevail either by establishing a defense or the absence of a necessary element. . . . If there is a conflict in the evidence (the existence of a disputed material fact), the anti-SLAPP motion should be denied." (*Citizens of Humanity, supra,* 46 Cal.App.5th at p. 598, citations omitted.)

## 2. *Elements of Malicious Prosecution*

"An action for malicious prosecution has three required elements: '(1) the defendant brought (or continued to pursue) a claim in the underlying action without objective probable cause, (2) the claim was pursued by the defendant with subjective malice, and (3) the underlying action was ultimately resolved in

the plaintiff's favor.' [Citation.]" (*Citizens of Humanity, supra,* 46 Cal.App.5th at pp. 598–599.)

### 3. *Oheck Cannot Establish Favorable Termination*

#### A. *Principles Governing Favorable Termination*

We are concerned with the final element – that the underlying action was ultimately resolved in Oheck's favor. This can be seen as implicating two elements: termination of the entire action, and termination on the merits, reflecting innocence of the underlying defendants.

First, favorable termination requires favorable resolution of the underlying action in its entirety, not merely a single cause of action. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 686.) "[I]f the defendant in the underlying action prevails on *all* of the plaintiff's claims, he or she may successfully sue for malicious prosecution if any one of those claims was subjectively malicious and objectively unreasonable. But if the underlying plaintiff succeeds on any of his or her claims, the favorable termination requirement is unsatisfied and the malicious prosecution action cannot be maintained." (*Lane v. Bell* (2018) 20 Cal.App.5th 61, 64.)

Second, the action must have been terminated on a basis which reflects upon the innocence of the underlying defendant. "A ' "favorable" termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action

14

for malicious prosecution.' [Citation.] ' "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.' " [Citations.]' [Citation.] 'Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. [Citation.]' [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 (*Sycamore Ridge*).)

Cases have identified specific types of termination which are generally considered favorable and others which are generally considered unfavorable. A voluntary dismissal may or may not constitute a favorable termination. If the voluntary dismissal is an implicit concession that the dismissing party cannot maintain the action, it may constitute a dismissal on the merits which is a favorable termination. (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1524 (*JSJ*).) "A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citation.] This is because ' "[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant] . . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." ' [Citation.]" (*Sycamore Ridge, supra,* 157 Cal.App.4th at p. 1400.)

In contrast, a dismissal on technical or procedural, rather than substantive, grounds is not considered favorable for purposes of malicious prosecution. (*JSJ, supra,* 205 Cal.App.4th at p. 1525.) These include dismissals for lack of jurisdiction, for

15

lack of standing, to avoid litigation expenses, or pursuant to settlement. (*Ibid.*) Generally, a dismissal resulting from a settlement does not constitute a favorable termination because the dismissal reflects ambiguously on the merits of the action. The purpose of a settlement is specifically to avoid a determination on the merits. (*Dalany v. American Pacific Holding Corp.* (1996) 42 Cal.App.4th 822, 827.) When litigation is terminated by agreement "there is ambiguity with respect to the merits of the proceeding and in general no favorable termination for purposes of pursuing a malicious prosecution action occurs. [Citations.]" (*Id.* at p. 828.) Even if the action was tried to a verdict, a subsequent bilateral settlement in which each side gave up something of value (reduced payment accepted in exchange for waiving right to appeal) defeats favorable termination as a matter of law.[8] (*Ferreira v. Gray, Cary, Ware & Freidenrich* (2001) 87 Cal.App.4th 409, 412–413.)

Considering these elements, Jimenez was partially successful in her action. The case was resolved by settlement, by which Oheck paid her (and her counsel) $50,000. Taking

_____

[8] Relying on *Roche v. Hyde* (2020) 51 Cal.App.5th 757, 790, Oheck argues that there is no unyielding rule that *no* resolution by agreement can *ever* be a favorable termination. We do not disagree. *Roche* explained that "[i]f the record clearly discloses the terms of an overall compromise of claims requiring dismissal as a condition," the rule that the dismissal was not a favorable termination applies. (*Ibid.*) But if there is no written settlement agreement, the court must assess the surrounding circumstances to discern the terms and determine if the dismissal was truly part of a bilateral agreement, as opposed to a unilateral voluntary dismissal. (*Id.* at p. 791.)

Jimenez's action as a whole, as we must, Oheck cannot establish that it was favorably terminated.

B.     *The Class Claims Cannot Be Considered Separately*

Oheck tries to avoid this result by parsing Jimenez's underlying complaint into two separate actions: her individual claims and her class claims. Pointing to the disputed facts surrounding whether the class claims were encompassed by the settlement, Oheck argues that it has established a probability of success because the class claims themselves were terminated in its favor. The argument is based on the unspoken premise that class claims are severable from individual claims for malicious prosecution purposes.[9] (Cf. *Sycamore Ridge, supra,* 157 Cal.App.4th 1385 [attorneys were properly sued for maliciously prosecuting the claim of one of 45 individually named plaintiffs in the underlying action].)

The argument misconstrues the nature of a class action, and fails on both the "entire action" and the "on the merits" elements of favorable termination.

As to favorable termination of the entire action, *Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576 establishes that there is no such thing as a separate class claim. In that case, Watkins brought a wage and hour class action. After the court denied her motion for class certification, she settled her individual claims, but purported to retain the right to appeal the denial of certification in her representative capacity. (*Id.* at p. 1581.) Division Three of the Second Appellate District

---

[9]     Oheck does not expressly argue that class claims are severable for malicious prosecution purposes, and therefore submits no authority in support of the argument. Oheck simply assumes that the class claims can be treated separately.

17

dismissed Watkins's appeal, on the basis that she had settled her wage and hour claim, which was indivisible.  (*Id*. at p. 1588.)  The court explained, "Watkins assumes, however, that her 'class claim' for unpaid overtime wages has independent vitality and can continue after she has settled her 'individual claim' for the same wages.  The argument reflects a misunderstanding of the nature of a class action.  A class action is a procedural device used 'when the parties are numerous, and it is impracticable to bring them all before the court.'  [Citation.]  In such a situation, 'one or more may sue or defend for the benefit of all.'  [Citation.]  When a plaintiff brings a class action, the plaintiff undertakes a fiduciary duty to the other members of the class, under which the plaintiff agrees not to settle the other class members' claims for the plaintiff's individual gain.  [Citation.]  But this *duty* should not be confused with an additional *claim for relief*.  A representative plaintiff still possesses only a single claim for relief—the plaintiff's own.  That the plaintiff has undertaken to also sue 'for the benefit of all' does not mean that the plaintiff has somehow obtained a 'class claim' for relief that can be asserted independent of the plaintiff's own claim.  '[T]he right of a litigant to employ [class action procedure] is a procedural right only, ancillary to the litigation of substantive claims.  Should these substantive claims become moot . . . , by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs.'  [Citation.]  Thus, a class representative's voluntary settlement of her individual claim constitutes a voluntary settlement of her *only* claim, and moots her right to proceed on appeal."  (*Id*. at pp. 1588–1589, fn. omitted.)

As in *Watkins*, Jimenez here possessed only a single claim for relief – her own. She did not also pursue class claims. The class action was no more than an ancillary procedure. We therefore do not separately consider whether the class claims were favorably terminated; Jimenez pursued a single claim for wage and hour violations, which was settled, on terms that included Oheck's payment of $50,000 to Jimenez.[10]

We reach the same result when we consider whether the class claims were resolved on the merits in Oheck's favor. Accepting Oheck's argument that the class claims were unilaterally dismissed, this establishes only a dismissal for procedural grounds, not on the merits. The class allegations were voluntarily dismissed without prejudice, and the court impliedly found the dismissal would not, in fact, prejudice the class members. Oheck suggests Jimenez voluntarily dismissed the class claims because she knew Oheck's pending motion to strike the class claims would be granted. But this does not render the dismissal a dismissal on the merits. Oheck moved to strike the class allegations on the basis that Jimenez was not an

[10] *Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136 [275 Cal.Rptr.3d 519] (*Area 55*) presented the mirror image of this case. There, attorneys were sued for maliciously prosecuting an underlying class action which, following certification, was dismissed for failure to prosecute. This was considered favorable termination sufficient to defeat their anti-SLAPP motion. The attorneys attempted to argue against favorable termination by parsing out the claims of a class representative from the claims of the class, arguing that their initial representative's claims were lost by abandonment, and therefore not resolved adversely on the merits. The Court of Appeal rejected this argument, because there is only one final judgment in a case. (*Id.* at p. ___ [275 Cal.Rptr.3d at p. 539].)

19

appropriate class representative and that she could not be replaced because individual issues would predominate. In other words, Oheck challenged the *procedure* of Jimenez's attempt to pursue class action relief, not the *merits* of the claim. To be sure, the argument was based on Oheck's purported evidence that Jimenez's individual claims were meritless (which rendered her an inappropriate class representative) and that it had no uniform illegal policies (which meant individual, not class, issues would predominate). But, the motion was, in essence, a motion that the *procedure* of a class action was inappropriate; it was not a summary judgment motion or similar motion directed to the merits of the class claims. We have found no California authority directly addressing whether a motion to strike class action allegations addresses the merits. (Cf. *Area 55, supra,* 61 Cal.App.5th at p. __ [275 Cal.Rptr.3d at pp. 543-544] [in the context of discussing whether the underlying action was pursued with probable cause, holding that rulings on class certification are procedural and do not reflect on the merits].) However, a Florida court has concluded that dismissal of a class action for lack of standing is not a favorable termination, as it is not inconsistent with the defendant's guilt. (*Della-Donna v. Nova University, Inc.* (Fla.Dist.Ct.App. 1987) 512 So.2d 1051, 1057; see also *Rowen v. Holiday Pines Prop. Owners' Ass'n* (Fla.Dist.Ct.App. 2000) 759 So.2d 13, 16 [dismissal of a class action suit for lack of standing is not a bona fide termination because the "lawsuit might later be brought by a plaintiff who better qualifies as a class representative"].)

Both paths lead to the same result for the same reason. A precertification voluntary dismissal without prejudice of so-called "class claims" cannot constitute a favorable termination on the

20

merits where, as here, the defendant agreed to pay the plaintiff a sum in exchange for the plaintiff's dismissal of her claims. A class action is merely a procedure by which a plaintiff can pursue her claim, not a separate claim that can be resolved on the merits independent of the plaintiff's own claim. The determination that the class action procedure is inapplicable in a particular case is not a resolution of the case on its merits, and does not constitute a favorable termination for malicious prosecution purposes.[11]

As the trial court did not rule on Jimenez's anti-SLAPP motion with respect to the second cause of action in Oheck's complaint against her, the trial court should consider the issue on remand.

### *DISPOSITION*

The orders denying the anti-SLAPP motions are reversed. The matter is remanded to the trial court with directions to grant in their entirety the anti-SLAPP motions of Attorney Ramirez and Attorney Mahoney and to award them attorney's fees under California Code of Civil Procedure section 425.16, subdivision (c)(1).

As to Jimenez, the matter is remanded with directions to grant the anti-SLAPP motion to the first cause of action for malicious prosecution and to rule on Jimenez's anti-SLAPP motion to the second cause of action for violation of Code of Civil Procedure section 128.5.

---

[11] Because we resolve the matter on the element of favorable termination, we need not reach the issue of whether the malicious prosecution action against Attorney Mahoney is barred by the statute of limitations or any of the other issues raised by Jimenez and her attorneys.

21

Ramirez, Mahoney and Jimenez are awarded their costs and attorney's fees on appeal, in an amount to be set by the trial court.


RUBIN, P. J.

WE CONCUR:



BAKER, J.



KIM, J.