Filed 12/16/22 Perry v. Escamilla CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MICHAEL RAYMOND PERRY et al., | |
| Cross-complainants and Appellants, | G060957 |
| v. | (Super. Ct. No. 30-2019-01113697) |
| DANIEL ESCAMILLA, | O P I N I O N |
| Cross-defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Walter P. Schwarm, Judge. Affirmed.

The Perry Law Firm and Chris J. Hoo for Cross-complainants and Appellants.

Law Offices of Seth M. Goldberg and Seth M. Goldberg for Cross-defendant and Respondent.

\*       \*       \*

Appellants, Michael Raymond Perry and The Perry Law Firm appeal from the trial court's granting of a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16). Appellants filed a cross-complaint alleging two causes of action against respondent Daniel Escamilla for intentional interference with contract and intentional interference with prospective economic advantage.

The trial court found Escamilla's conduct as alleged in the cross-complaint was protected by the anti-SLAPP statute and that appellants had not met their burden to show a probability of prevailing on the merits. We review the motion ruling de novo and affirm.

FACTUAL BACKGROUND

*Context of Economic Relationships Between the Parties and Third Parties*

This case is based on an anti-SLAPP motion, so we accept as true appellants' material allegations about the underlying events that occurred over four days in October 2019. The issues in this appeal center on the parties' respective relationships with two siblings, B.B. (brother) and C.K. (sister), who were involved in the ownership of a restaurant, along with another business entity. We may sometimes refer to the business entity and siblings in our discussion collectively as "the third parties."

Perry had been an attorney for the third parties, representing them in business and personal matters. Escamilla appears to have been acquainted with Perry incidentally because of their respective relationships with the third parties. At the time of the underlying events, Escamilla had known Perry for over a decade and knew Perry had been an attorney for the third parties, including the siblings' family and its members, for over 12 years. According to Perry, Escamilla had never been an employee of the third parties but, had "been retained occasionally as an 'administrative consultant' from time to

2

time, in the past." Escamilla was not licensed to practice law at any time relevant to this appeal.

*The Events Underlying This Appeal*

On October 5, 2019,[1] three electrical transformers owned and operated by Southern California Edison (SCE) exploded inside a concrete vault located at the Old World Restaurant in Huntington Beach. The incident caused injuries to multiple individuals, but the most serious injury was inflicted on B.B., who spent several weeks in an intensive care burn unit.

On the evening following the incident, Escamilla appeared at the restaurant uninvited and began assisting C.K. in responding to the news about the explosion involving the restaurant. According to Perry, C.K. gave Escamilla "limited authority on behalf of herself, [B.B.], and [the restaurant], to make a statement to the media that the family was appreciative of the outpouring of support, and to voice support for the other injured individuals."

On the morning of October 6, Perry and Escamilla had a telephone conversation. Perry was informed by Escamilla that Escamilla had discussed the explosion and B.B.'s injuries with SCE and that the California Occupational Health & Safety Administration (OSHA) had visited the restaurant to open an investigation. Escamilla stated he was legally authorized "to handle OSHA hearings," and that he "had th[e] situation handled." According to Perry, Escamilla's contact with OSHA resulted in the agency "opening an official report/case inquiry, as well as an investigation of the [e]xplosion site."

According to Perry, Escamilla stated: "'I have this matter positioned just where I want it.'" Perry cautioned Escamilla could be practicing law without a license

---

[1] All further references to dates are to the year 2019 unless otherwise specified.

and asked Escamilla to stop.[2] Escamilla asserted "he knew what he was doing and what he [was] allowed to do and not do."

Later that same day, Escamilla gave an interview to news agencies, identifying himself as the authorized representative of the third parties. Among others, Escamilla made a statement implicating potential preincident knowledge of unsafe conditions at the restaurant. According to Perry, Escamilla explained he wanted to "'try the case in the media.'"

Also on October 6, Escamilla contacted SCE "to further discuss the [e]xplosion." According to Perry, Escamilla did this "without any authority" and contacted C.K. to receive settlement authorization because he wanted to make a counteroffer. C.K. replied Escamilla was to take no action and neither contact SCE or make any settlement demands.

On October 7, according to Perry, Escamilla "had his law school classmate show up at [B.B.]'s hospital room in an attempt to have [B.B.] hire him as his personal injury attorney for his claim against SCE." Either Escamilla or the classmate retained expert services to observe SCE repairs being made at the restaurant.

Perry contacted C.K. to visit the restaurant and "assist with issues regarding the news reports and Escamilla's unauthorized statements." When Perry arrived, Escamilla was at the restaurant's "administrative offices and immediately attempted to keep [Perry] from speaking directly with" C.K.

Escamilla wanted to privately explain to Perry how Escamilla had the "'matter handled.'" Perry "informed Escamilla that he had made a mistake, that he needed to stop and that [Perry] needed to speak to [C.K.] privately. [Perry] purposely

_____

[2]     Although not material to our disposition of this appeal, according to Perry, prior to the underlying events, Perry had cautioned Escamilla the latter could be engaging in the unlicensed practice of law, in violation of Business and Professions Code section 6125 ["No person shall practice law in California unless the person is an active licensee of the State Bar"].

4

used colorful language such that [C.K.] would grasp the gravity of the situation and realize that she needed to speak to [Perry] privately." Perry explains he "had never used any such language in [C.K.'s] presence in the past" and asserts it was his "impression and observation that [Escamilla] was attempting to take advantage of [Perry's] long term [c]lient, [C.K.,] who was obviously very distraught over the explosion and her seriously injured [b]rother."

Perry privately met with C.K. for a few hours and discussed next steps the third parties "should, or could, take, including retaining other attorneys that specialize[d] in personal injury claims and insurance claims for loss of business," because Perry's law firm did not handle personal injury matters.

"After reviewing the information that Escamilla was not authorized to make the vast majority of the statements he had made," Perry states: "we [*sic*] were authorized and instructed by my Clients to send [a] [c]ease and [d]esist letter to [] Escamilla. We [*sic*] were informed that the statements made by Escamilla exceeded [his] authority, were inaccurate and did not reflect the beliefs and understanding of anyone associated with the [third parties] or the [siblings'] family." On October 8, Perry, through his law firm, electronically sent Escamilla a "cease and desist" letter that is not material to our analysis of this appeal.

*Escamilla's Complaint and Appellants' Cross-Complaint*

The following month, Escamilla filed a complaint against Perry and his law firm, alleging six causes of action based on Escamilla's version of events.[3] Perry and his firm filed the cross-complaint against Escamilla underlying this appeal, based on the

---

[3] Not material to our analysis of this appeal, appellants filed an anti-SLAPP motion against all of Escamilla's causes of action. The trial court denied the motion for five of the causes and granted it for one.

events described above, asserting two causes of action: intentional interference with prospective economic relations and intentional interference with contractual relations.

*Escamilla's Anti-SLAPP Motion and the Trial Court Ruling*

Escamilla responded to the cross-complaint with an anti-SLAPP motion, contending appellants' causes of action arose from Escamilla's protected free speech and that appellants did not show a probability of prevailing on their causes of action.

The trial court granted Escamilla's motion. On the first step of analysis under the anti-SLAPP statute, the trial court found Escamilla carried his burden to show appellants' claims arise from activity protected by the anti-SLAPP statute. On the second step of analysis under the statute, the court found appellants had not met their burden to show a probability of prevailing on the merits of their causes of action because they had not demonstrated an existing contract between Perry and any of the third parties, independently wrongful conduct by Escamilla as required for economic interference claims, nor sufficient evidence of actual harm. Appellants timely appealed.

DISCUSSION

Appellants do not dispute the trial court's ruling as to the first step of the anti-SLAPP analysis.[4] As to the second step, they assert three grounds to argue they sufficiently showed a probability of prevailing on their causes of action: (1) the trial court erroneously weighed credibility in ruling in favor of Escamilla; (2) there was sufficient evidence of wrongful conduct committed by Escamilla; and (3) sufficient

---

[4] At oral argument before this court, Perry's counsel represented that the trial court's ruling on the first step of the anti-SLAPP analysis was being challenged, but there is no analysis on protected speech in Perry's briefing. (See *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 710 [reviewing court not "required to consider alleged error where the appellant merely complains of it without pertinent argument"].)

6

requisite harm had been shown. For the reasons discussed below, our review of appellants' final contention is dispositive of this appeal.

*Standard of Review and Relevant Anti-SLAPP Principles*

"We review de novo the grant or denial of an anti-SLAPP motion" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067) mindful that "'[t]he Legislature enacted the anti-SLAPP statute to address the societal ills caused by meritless lawsuits that are filed to chill the exercise of First Amendment rights.'" (*Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, 702.)

"A court evaluates an anti-SLAPP motion in two steps"; to succeed the movant must meet its burden on the first step and then the resisting party must fail to meet its burden on the second step. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.) Specifically, on the first step, "'the moving [party] bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the [movant] has engaged. If the [movant] carries its [first step] burden, the [resisting party] must then demonstrate [in the second step of analysis that] its claims have at least "minimal merit,"'" which shows a probability of prevailing, to justify denying the anti-SLAPP motion. (*Id.* at p. 884, citation omitted.)

Appellants do not challenge the trial court's ruling on the first step of the anti-SLAPP analysis, as noted, and we do not discern any error in it. We therefore focus on whether appellants carried their burden on the second step of the anti-SLAPP analysis, to "'"demonstrate that [their claims are] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).)

"'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.]'" (*Oasis West, supra*,

7

51 Cal.4th at p. 820.) "[W]ithout resolving evidentiary conflicts," we determine whether appellants' showing, "if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)

Parties resisting anti-SLAPP motions may not carry their burden to present a prima facie showing of minimal merit based on evidence that is "argumentative, speculative, impermissible opinion, hearsay, or conclusory." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26; see, e.g., *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 795 ["speculative inferences not supported by the evidence proffered need not be considered"]; *Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 890, ["'speculative inferences not supported by the evidence' fall short of establishing a prima facie showing"].)

*Analysis*

As noted, appellants assert two causes of action against Escamilla: intentional interference with contract and intentional interference with prospective economic advantage.

To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage. (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1148; see *Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126 ["The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective"].)

8

Similarly, there are five essential elements to prove for the tort of intentional interference with prospective economic advantage: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

As noted, when the trial court granted Escamilla's anti-SLAPP motion, it found appellants had not shown an existing contract between Perry and any of the third parties, as required for their intentional interference with contract cause of action. Appellants dispute this point on appeal and assert the court improperly weighed credibility in arriving at its conclusion. We find no merit in this assertion but conclude this appeal fails on a more fundamental ground shared in both causes of action.

Both causes of action include an essential element, namely that of harm. Appellants attempt to make their prima facie showing of harm by citing to six paragraphs in their cross-complaint and one paragraph in Perry's declaration. They contend appellants "are now in the unenviable position of having to clean up the mess that [Escamilla], a non-lawyer, created while attempting to engage in [unlicensed practice of law]."

Specifically, appellants alleged that, "[i]n addition to exposing the third parties to significant potential liability with his unauthorized statements to the media, [Escamilla] also damaged [appellants'] ability to negotiate a fair settlement with SCE for [their] clients and created confusion and disruption between everyone, by attempting to 'refer' personal injury attorneys and holding himself out as having 'legal authority' to speak for [the third parties].

"As a result, [appellants] have suffered damages in the form of lost time, lost money, lost work, and loss of reputation amongst all parties and entities involved.

9

Specifically, SCE thinks they have already spoken to [B.B]'s lawyer regarding injuries and settlement; []OSHA has prematurely opened up an investigation into the [e]xplosion [incident]; and [Perry] had to interview and introduce to [B.B] several personal injury attorneys, explaining to him the rules against non-attorney referrals and fees. All of this this [*sic*] is in addition to the 'media trial' that [Escamilla] purposefully ignited."

As noted, the trial court found appellants had failed to satisfy the required element of harm, concluding "[t]he alleged damage is damage to the [siblings] and the other third parties and not to [appellants]." Appellants argue the court improperly weighed the evidence submitted in concluding their showing was insufficient. They note "[i]t is not the burden of the party" resisting an anti-SLAPP motion "to prove all of the elements of his case, only to provide the minimal of evidence that, when taken as true along with the pleadings, would support the claim of the opposing party, without weighing such evidence."

In their briefing on the element of harm, appellants cite to one case, *Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, without discussion. That case involved an anti-SLAPP motion about the elements of malicious prosecution (*id.* at pp. 1390-1391), not at issue here. Although the case does illustrate the general importance of how a party resisting an anti-SLAPP motion can meet its second step burden to show minimal merit in its factual claims through "reasonable inference[s]" (*id.* at pp. 1400, 1409), appellants do not discuss the evidentiary analysis applicable to their case. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 ["'[w]e are not bound to develop appellants' arguments for them'"].)

Appellants have failed to demonstrate how their alleged facts and reasonably supported inferences satisfied their required showing of harm. We take no issue with the general proposition that appellants' burden on the second step of anti-SLAPP analysis does not require more than a minimal showing of merit.

10

Notwithstanding, it is clear the showing cannot rely on unsupported inferences. (*Abir Cohen Treyzon Salo, LLP v. Lahiji, supra*, 40 Cal.App.5th at p. 890.)

The facts alleged have more to do with harm potentially suffered by the third parties as opposed to appellants, as a result of the alleged "mess" created by Escamilla. Appellants have not alleged a loss specific to their business involving a client or retention for services to be performed. On the contrary, the record is clear appellants' economic relationship with the third parties, as it relates to the underlying explosion incident, proceeded and could even have been galvanized by Escamilla's conduct. A conclusion that a relationship was formed between a plaintiff and a third party because of a defendant's conduct is generally antithetical to a theory of economic interference.

Appellants also do not allege a diminution in recovery of their attorney fees. Indeed, the record could reasonably be read to support the opposite conclusion— i.e., that the alleged "mess" created by Escamilla generated additional fees for appellants because of additional attorney services necessitated by his conduct. Ultimately, we cannot and do not make any factual conclusions on these points (*Baral, supra*, 1 Cal.5th at p. 396), but merely note the logical possibilities of such inferences reinforce our conclusion that the harm appellants invite us to draw is speculative, given the particular circumstances and causes of action at issue.

In sum, appellants did not present sufficient facts or briefing to demonstrate harm to their economic relationships with the third parties and, even taken as true, do not demonstrate a factual basis to support the element of economic harm. Appellants therefore have failed to make the requisite showing as to an essential element of their claims. Independent of whether Escamilla engaged in the unlicensed practice of law as alleged (a point we express no opinion on), appellants have failed to carry their burden as to the second step of the anti-SLAPP statute, namely to demonstrate a probability of prevailing on the merits of their causes of action against Escamilla.

## DISPOSITION

The November 17, 2021 order granting the cross-defendant's anti-SLAPP motion is affirmed. Respondent shall recover his costs on appeal.


MARKS, J.*

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.